# WILLIAM A. FORTH

## *v.*

## GEORGE PURSLEY.

. 1. TROVER—*right of plaintiff to maintain.* In trover, it is essential that the plaintiff, at the time of the alleged conversion of the property, have not only the right of property in the chattel, but also the right to its immediate possession.

2. SAME—*when plaintiff has leased the property.* If, at the time of an alleged conversion by refusal to give possession, the property is leased to a third party, whose term has not expired, even the owner can not maintain trover, as he has no right to possession.

3. SAME—*proof of conversion.* Where the proof fails to show that the defendant ever had the actual possession of a chattel, or in any way prevented the plaintiff from using the same, but shows that, while it was leased by the plaintiff, the defendant purchased the same at a sale for taxes, and, before the lease had expired, the defendant refused to part with his claim, this will not establish a conversion.

. 4. SAME—*when plaintiff claims as mortgagee.* If the plaintiff in trover claims title to an undivided half of a portable mill, under a chattel mortgage, and has never made any demand for one-half of the property, or for common possession as owner of a half interest, but has demanded the whole before his mortgage became due, and when he had no right of possession, he can not recover.

5. LEVY—*when a taking of possession necessary.* While, as against the intervening rights of purchasers and incumbrancers, complete possession in an officer levying upon personal property for taxes is necessary before the sale, yet, as to the party against whom the officer holds the warrant, or any one claiming under him by purchase before the levy or after the sale, possession in the officer is not essential to a valid sale by him.

APPEAL from the Circuit Court of Clay county; the Hon. JAMES C. ALLEN, Judge, presiding.

This was an action of trover against Forth, for the alleged conversion to his own use of the undivided half of a certain portable saw mill, alleged to have been, at the time of the conversion, the property of George Pursley.

The proof for plaintiff tends to show the following: The mill was bought in May, 1870, by Wm. Pursley and Wm. Jacks, and, in the spring of 1871, Wm. Pursley sold his

interest to Wm. Jacks. In August, 1871, Jacks sold the whole of the mill to Wm. Pursley, and, soon after, Wm. Pursley sold half of the mill to Wheeler. On the 16th of September, 1871, Wm. Pursley executed a chattel mortgage to George Pursley, upon the undivided one-half of the mill, and upon other personal property, to secure the payment by William to George of $1015, on the 16th day of September, 1872, and interest thereon. The mortgage provided that William should retain possession until the maturity of the debt, unless George should "feel himself unsafe or insecure," and, in that case, he should have the right to take possession and sell the property.

About the middle of October, 1871, Wm. Pursley offered to sell his half of the mill to George Pursley for $1000, and George said he would take it. On the 2d day of December, 1871, Charles Wheeler and George Pursley made a lease of the whole mill to Abbot and Falton for three months from that date, the rent to be paid in lumber. On the 4th day of December, 1871, George Pursley filed his mortgage for record.

On the 15th of December, 1871, a warrant for the collection of taxes from Wm. Pursley was issued to Wm. Songer, tax collector, which came to his hands on the 25th of the same month. Songer levied upon the mill by virtue of this tax warrant, and, having given due notice, sold the same at public sale, and Forth bid it off at $58, and paid that sum. At the time of the levy, the collector made no indorsement upon his warrant, nor did he take actual possession of the mill, but, on the day of the sale, the mill being in operation, he stopped it and made the sale, and turned the mill over to the purchaser. After this, the lessees, Abbot and Falton, paid rent to George Pursley for the use of the mill.

George Pursley testifies: "About a week after the mill was sold for taxes, I went to Forth and told him I had the money. He said he had a better thing, and would not let me have the mill. The mill is still on Forth's lot. * * * Wm. Jacks was present at the time. I offered Forth $100."

Wm. Jacks testified: "After the tax sale, George Pursley got me to go and see Forth, and see if he would take his

money back. He said he would not." And, again, he says: "The mill was busted at the time of the tax sale. A short time after it was sold for taxes, I *gave it up to Wm. Pursley.*"

Forth testifies: "George Pursley never demanded one-half of the mill of me.   *   *   *   George Pursley never talked to me about one-half of the mill. He was always talking about buying the whole of the mill. I offered him the whole mill for $800. I have put a good deal of repairs on the mill, and have sold it conditionally."

There are several witnesses who testify that George Pursley had said that he did not own the mill; that William wanted him to take it for the mortgage debt, but he refused.

Mr. H. H. CHESLEY, and Mr. BENJ. HAGLE, for the appellant.

Mr. B. B. SMITH, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

In actions of trover, it is essential that the plaintiff, at the time of the alleged conversion of the property, have had not only the right of property in the chattel, but the right to the immediate possession of the same. In this case, the only proof tending to show a conversion of the property by the defendant, is that in relation to a supposed demand made about a week after the sale of the mill for taxes, when the plaintiff swears the defendant "would not let me have the mill."

The mill was leased on the 2d of December, by plaintiff and Wheeler, to Abbot and Falton, for three months from that date, and this demand and refusal were before these three months had expired. The right of possession (if the right of property was in plaintiff and Wheeler) was in the lessees at this time. In such case, plaintiff could not maintain trover. In the 2d vol. of Selwyn's Nisi Prius, 1364, it is said, "where a person leased a house, with the furniture therein, to another for a certain time, and during that term the furniture was

seized by the sheriff, as the property of a former owner, it was held that the landlord could not maintain trover against the sheriff, because the landlord did not have the right of possession during the demise;" and reference is made to *Gordon* v. *Harper*, 7 T. R. 9, *Frazer* v. *Swansea Canal*, 1 A. and E. 354, and *Owen* v. *Knight*, 4 Bingh. N. C. 54.

The proof of right of property in the plaintiff in this case is not clear and satisfactory. The proof of a conversion is still less satisfactory. In fact, it is not shown, with any definite certainty, that the defendant in this case ever had the actual possession of this mill, or that he ever, in any way, used the same, or prevented plaintiff from using the same. It is shown that he claimed title under the tax sale, and that he refused to accept $100 and relinquish that claim, but it does not appear in whose possession the mill was at that time.

It is shown that, after the sale for taxes, these lessees continued to pay rent to the plaintiff, which would seem to indicate that the mill was in their possession after that.

Wm. Jacks, a witness for the plaintiff, swore that he, at one time, owned this mill, and he says: "A short time after it was sold for taxes, I gave it up to Wm. Pursley." In the midst of such confusion and contradictions in the testimony, we might be inclined to let the verdict stand, if the law of such cases had been plainly given to the jury, with no instructions tending to mislead; but the court instructed the jury as follows: "If you believe, from the evidence, that defendant and plaintiff were joint and equal owners of the mill, and defendant assumed exclusive ownership over said mill, against the plaintiff, excluding him from the possession, unless you believe, from the proof, that the defendant had a valid title by a tax sale, you should find defendant guilty." This is not the law of the case, under the proofs. If, at the time of defendant assuming exclusive ownership and excluding plaintiff from the possession, the mill was rented to Abbot and Falton, and they had the right of possession, such facts were not sufficient to require a verdict of guilty.

The third instruction was as follows: "If the mill belonged

to George Pursley up to the 15th of December, 1871, and Forth converted the same to his own use, and was exercising acts of ownership over it at the time of the commencement of this suit, you will find for the plaintiff." The suit, as appears from the date of the summons, was begun March 26, 1874. This instruction is plainly erroneous. It says, in substance, that, if the right of property was in plaintiff three years before the suit was begun, and the defendant, at any time, converted the property to his own use, and was, at the time the suit was brought, exercising acts of ownership, the verdict must be for the plaintiff, even if, at the time of conversion, the plaintiff had neither the right of property nor the right of possession.

The fourth instruction says: "If the mortgage read in evidence was given by the owner of the mill, and that the same was unpaid when the same became due, then the plaintiff has a right to take possession of the undivided one-half of the mill, under the mortgage, for the purpose of enforcing the collection of his debt; and if * * * the defendant had exclusive possession of the mill, and refused to surrender possession of the undivided half thereof to the mortgagee, and converted the same to his own use, you should find for the plaintiff." When it is remembered that the mortgage fell due in December, 1872; that the only evidence tending to prove a conversion relates to transactions in December, 1871, and that no demand for one-half of the mill, or for a common possession as owner of one-half thereof, was ever made, and that there is no evidence of any claim having been made after the mortgage debt fell due, and that the evidence tends to show that, from the 2d of December, 1871, until the 2d of March, 1872, the plaintiff was not entitled to the possession of any interest in the mill, it is plain that this instruction not only tended to mislead the jury, by introducing matters having no bearing upon the case as proved, but was affirmatively erroneous in ignoring the rule requiring the right of possession in plaintiff at the time of the supposed conversion.

The eighth instruction was, "that, before a valid tax sale

of personal property can be made, the collector must take possession of the property by virtue of his levy, and the possession must be complete, and if there is no such possession, the sale is invalid, and the purchaser takes nothing." While it may be the law, that, as against intervening rights of strangers as purchasers or incumbrancers, complete possession in the officer, before the sale, may be essential, yet, in this case, there is no proof of any purchase from Wm. Pursley after the levy and before the sale, and it is not perceived how the want of such possession, as against Wm. Pursley or any one claiming under him by purchase before the levy or after the sale, could affect the validity of the tax sale.

The judgment must be reversed, and the cause remanded for another trial.

*Judgment reversed.*