GAAR, SCOTT & CO. *et al.*

*v.*

SILAS HURD.

1. POSSESSION—*taking possession under chattel mortgage—whether sufficient.* A mortgagee of an undivided two-thirds interest in a portable engine, in order to show he had taken possession of the property under the mortgage, made the facts appear as follows: The engine had been taken to a foundry by the owner of the other one-third interest, in whose possession the property was, for the

| 92 | 315 |
| 25a | 617 |

| 92 | 315 |
| 30a | 22 |

| 92 | 315 |
| 35a | 502 |
| 35a | 605 |
| 37a | 51 |

| 92 | 315 |
| 52a | 32 |

| 92 | 315 |
| 156 | 279 |
| 157 | 585 |

| 92 | 315 |
| 58a | 76 |

| 92 | 315 |
| 174 | 493 |

| 92 | 315 |
| 91a | 14 |

purpose of repairs. The mortgagee found the engine at the foundry, and told the owner of the foundry to look after it for him, and he said he would retain it, and let the mortgagee know if anything should happen; and upon the interest of the owner of the one-third of the engine being attached, the owner of the foundry notified the mortgagee of the fact. This was all the possession the mortgagee took, and in view of the ponderous nature of the property, and being already on the premises of a third party claiming no interest in it, such a taking of possession was all the law required.

2. CHATTEL MORTGAGE—*possession in mortgagee as obviating defect in acknowledgment.* Where a mortgagee of chattels has taken possession of the property under his mortgage, as to the rights of third persons subsequently acquired it is immaterial whether the mortgage was acknowledged before the proper officer, or, indeed, whether it was acknowledged at all.

3. SAME—*mortgagee taking possession prematurely—who may object.* The question, whether a mortgagee of chattels has taken possession of the property before he had a right to do so under the terms of the mortgage, is one which concerns the mortgagor alone, and can not be raised by third persons who had no interest in the property at the time the possession was taken.

4. SAME—*where part interest of another in the property is attached—duty of mortgagee, as to purchaser under the attachment.* Where a mortgagee of a part interest in a chattel has reduced the property to possession, and the part interest of another therein is levied upon under an attachment against such other person, and in pursuance of the levy the officer takes the property into his possession, the mortgagee at the time having no knowledge of the levy, it is not necessary to the preservation of his rights under his mortgage as against the attaching creditor that he should pursue the property and attempt to reclaim it from the officer.

5. SAME—*and herein, of taking possession of a chattel by an officer who levies upon a part interest therein.* Indeed, in such case the mortgagee would have no right to reclaim the possession of the chattel from the officer, nor, if he had been present at the time of the levy, would he have had any right to interfere with the officer in taking possession under the levy, because an officer has the right, under a writ against one tenant in common of a chattel, to take possession of the property to the exclusion of the others.

6. SAME—*when mortgagor's equity of redemption is levied upon—duty of mortgagee as to subsequent purchasers under such levy.* Nor is it essential to the preservation of the rights of a mortgagee of a chattel who has acquired the possession of the property under his mortgage, in case of a levy by attachment upon the mortgagor's equity of redemption, to interpose his superior right of possession for the purpose of selling under the mortgage, and thereby prevent the sale of the mortgagor's interest under the attachment. So far as purchasers under such attachment are concerned, it is at the option of the mortgagee, as his interest may suggest, whether he will, under such circumstances, assert

his superior right to subject the property to sale for the satisfaction of his debt.

7. TAX LIEN—*as respects personal property—rights of purchasers under tax sale as against subsequent purchasers of the property.* The mere assessment of taxes in respect of personal property will not create a lien upon such property. The warrant for the collection of such taxes will, however, become a lien upon the personal property of the person assessed, from the time it comes to the officer's hands. But if the party assessed should sell or mortgage the property before the warrant comes to the hands of the officer, the purchaser or mortgagee will be protected as against any subsequent seizure and sale of the property under such warrant for the taxes assessed against the vendor or mortgagor.

8. And where a chattel is levied upon under an attachment against the then owner, and subsequent to such levy the tax warrant comes to the hands of an officer, the rights of a purchaser under a judgment rendered in the attachment suit will relate back to the date of the levy of the attachment and he will hold the property free from any lien under the warrant for taxes.

9. In such case, as against a mortgagee of the chattel prior to the time the tax warrant came to the hands of the officer, a purchaser under a levy of such warrant would have no claim for reimbursement of the sum he may have paid at the tax sale.

10. RES ADJUDICATA. One tenant in common of a chattel can not maintain replevin against his co-tenant, for the whole property. So, where a mortgagee of a two-thirds interest in a chattel brought replevin against the owner of the other third, the plaintiff and defendants were regarded as tenants in common of the property and the action could not therefore be maintained, and a general judgment in that action against the plaintiff, and awarding a return of the property, if such judgment was given by reason of the relations of the parties as tenants in common, could not operate to determine the rights of the plaintiff as mortgagee, so as to preclude him from foreclosing the mortgage for the satisfaction of his debt.

11. FORECLOSURE *of chattel mortgage where property is in possession of another —whether a sale should be ordered, or the party in possession be decreed to pay the value.* A mortgagee of a two-thirds interest in a portable engine brought his suit in chancery for foreclosure. One of the defendants in the bill was the owner of the other third interest in the engine, and had the property in his possession in another State, to which he had removed it from this State, for the purpose of defeating the rights of the complainant as mortgagee, and denying the complainant's rights altogether. The decree directed the party thus in possession of the property to pay the complainant two-thirds of its value instead of ordering a sale. This was held to be proper, in view of the circumstances named, and of the further fact that defendant did not propose or evince a willingness to return the property within the jurisdiction of the court in

order that it might be sold, and also in consideration of the difficulty and expense which would attend the removal of such property.

APPEAL from the Circuit Court of Clinton county; the Hon. AMOS WATTS, Judge, presiding.

Mr. G. VAN HOOREBEKE, for the appellants:

The fact that a chattel mortgage which is not properly acknowledged has been recorded, will not give it validity as against third persons. *Frank* v. *Miner,* 50 Ill. 444.

The mortgagee did not reduce the property to possession. He must obtain actual possession before other rights accrue. *Frank* v. *Miner,* 50 Ill. 444; *Wilson* v. *Pearson,* 20 id. 87. There must be a change of possession. *Ketchum* v. *Watson,* 24 Ill. 591, 592. Actual possession must be taken, and the burden of proof is on the plaintiff. Am. Law Reg., vol. 6, p. 693; 53 Penn. State, 256; *Houston* v. *Howard,* Am. Law Reg., vol. 6, p. 438. What is said in Freeman on Executions, page 431, concerning the levy of an officer, is applicable here: "The change of possession must be actual and substantial, and not merely formal or colorable."

The mortgagee failed to reclaim the property after it had been attached for the debt of another, and taken into possession by the officer. This should operate to estop him from afterwards claiming under his mortgage.

An estoppel may arise from passive conduct. Bigelow on Estoppel, 500. Silence is held to work an estoppel. Id. 501, 502, 512, 513; so does acquiescence, id. 525, and negligence, id. 556, 557. *Hefner* v. *Vandolah,* 57 Ill. 520; *Cochran* v. *Harrow,* 22 id. 345.

Under the insecurity clause in the mortgage the mortgagee could not take possession until default, or he had shown by evidence that there was danger of loss, either by sale or levy. There is no evidence in the record that he even thought there was danger. *Bailey* v. *Godfrey,* 54 Ill. 507; *Lewis* v. *D'Arcy,* 71 id. 648; *Furlong* v. *Cox,* 77 id. 295.

The mortgage debt not being due, if he took possession he

should have proceeded at once to advertise and sell. *Lewis* v. *D'Arcy*, 71 Ill. 648, is in point.

Appellants' title under the tax sale is good as against appellee's mortgage.

In the case of *Forth* v. *Pursley*, 82 Ill. 182, the facts are identical with the case at bar. Pursley sold an undivided half of a portable saw-mill in August, 1871, and in September mortgaged the other half, and in December the warrant came to the hands of the collector, who levied it and sold the property, and the tax sale is held to be valid.

Neither could Hurd, under his mortgage, claim any immunity, for no title passes under a mortgage until default, and no default had occurred. *Simmons* v. *Jenkins*, 76 Ill. 479.

A tax is not an ordinary debt. It takes precedence of all other demands, and is a charge upon the property. Without reference to the matter of ownership, the property itself may be seized and sold, though there may be prior liens or incumbrances upon it. *Dunlap* v. *County of Gallatin*, 15 Ill. 7.

At any rate, appellants should be reimbursed by appellee two-thirds the amount paid at the tax sale. *Morgan* v. *Herrick*, 21 Ill. 481; *Illinois Land and Loan Co.* v. *Bonner*, 75 id. 315.

The judgment in the prior action of replevin is a bar to this suit to foreclose the mortgage. The title to the property having been put in issue and determined, the judgment in the former action is conclusive of that question. *King et al.* v. *Ramsey*, 13 Ill. 619. The finding in that case was: "After hearing the evidence and argument of counsel, the court finds the issues for the defendant." What issues? That Gaar, Scott & Co. owned the engine. Not one issue, but all the issues in the case were found in their favor. The case of *Underwood* v. *White*, 45 Ill. 437, is in point.

What was judicially determined in this replevin suit, to which the complainant and the defendant, Curtin, were parties, was simply that Gaar, Scott & Co. owned the engine. This being so, is not the ownership of this property *res adjudicata?*

The judgment of a court of competent jurisdiction is an estoppel as to all matters put in issue by the pleadings. *Jackson* v. *Lodge,* 36 Cal. 28.

When a judgment in one action is offered in evidence in a subsequent action, upon a different demand, it operates as an estoppel only upon the matter actually at issue and determined in the original action. *Davis* v. *Brown,* 94 U. S. 423; *McDaniel* v. *Fox,* 77 Ill. 343.

When the suit is against the agent it is binding on the principal. *Phillips* v. *Moir,* 69 Ill. 155. So, in the case at bar, the judgment in favor of Curtin, the agent, may be availed of by Gaar, Scott & Co., since the issue presented was their ownership of the property. *Peters* v. *Nehf,* 80 Ill. 25.

A party who recovers in replevin, etc., can not afterwards sue the same and another party in trespass for the same transaction, etc. *Karr* v. *Barstow,* 24 Ill. 580; *Moore* v. *Rogers,* 19 id. 347.

Whatever the parties choose to present in issue by their pleadings and proof, whether of law or fact, ought to conclude them, if the pleas and proof present the merits of the controversy. *Vanlandingham* v. *Ryan,* 17 Ill. 25.

Everything within knowledge that complainant might have litigated in the first suit, is conclusive. *Hamilton* v. *Quimby,* 46 Ill. 90; *Kreuchi* v. *Dehler,* 50 id. 176.

It not only embraces what has been actually determined in the former case, but also extends to any other matter which might have been raised and determined. *Rogers* v. *Higgins,* 57 Ill. 244; *Lathrop* v. *Hayes,* id. 279.

Messrs. WALKER, and MURRAY & ANDREWS, for the appellee:

The validity of appellee's mortgage is not to be considered, because he had taken possession of the mortgaged property.

Even if appellee had notice of the attachment proceedings he could not have interfered. It was a levy upon a co-tenant's interest. *Newhall* v. *Buckingham,* 14 Ill. 405.

Whether appellee had the right to take possession under his mortgage at the time he did, is of no concern except to the mortgagor. The appellants are in no position to make that objection. The case of *Furlong* v. *Cox,* 77 Ill. 295, cited by appellants, was between mortgagor and mortgagee.

Upon the facts in this case, it was not incumbent upon appellee to proceed to sell under his mortgage upon taking possession of the property. The case of *Lewis* v. *D'Arcy,* 71 Ill. 648, has no application to these facts. Appellants were not prejudiced by the omission to sell, and, moreover, a greater part of the time it was out of the power of appellee to sell. Appellants contend that the judgment in the prior action of replevin is a bar to this suit, and in support of the proposition cite *King* v. *Ramsay,* 13 Ill. 519, and *Underwood* v. *White,* 45 id. 437, to show that the title to the property had been put in issue in the former suit. As we understand the law, in order to be a bar to the second action it is not only necessary that it is the same subject matter, but that it also be between the same parties. *Miller* v. *McManis,* 57 Ill. 126. Nor do the authorities above referred to militate against this doctrine. See also, *Packet Company* v. *Sickles,* 5 Wallace, 580.

Counsel cite *Hamilton* v. *Quimby,* 46 Ill. 90, and *Kreuchi* v. *Dehler,* 50 id. 176, to show that everything that might have been litigated should have been litigated. This we concede, but claim that the bill in the case at bar and the proof admitting appellants to be owners of one-third of the engine, shows conclusively that it could not have been litigated.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a decree of foreclosure of a chattel mortgage, rendered by the circuit court of Clinton county on the 17th day of November, 1876.

The bill charged in substance that on the 8th of July, 1874, William Bonner, Frank M. Layson and J. L. Bonner, being indebted to James W. McClelland in the sum of $260, exe-

cuted to him their two several promissory notes, each for the
sum of $130, payable in ninety days and six months respec-
tively; that William Bonner and Layson, at the time of the
making of the notes, were the owners of an undivided two-
thirds of a portable engine and five-sixths of a separator
threshing machine, with truck-wagon, belts, etc., and for the
purpose of securing said notes executed and delivered to Mc-
Clelland a chattel mortgage on the same; that on the 11th
of the same month, three days afterwards, and before any part
of the notes had been paid, the said McClelland, for value, in-
dorsed and delivered the same to appellee, and at the same
time transferred the mortgage by which the notes were secured;
that Daniel Hartley was the owner of the other sixth of the
threshing machine, truck-wagon, belts, etc.; that Gaar, Scott
& Co. owned one-third of the portable engine, having derived
their title through Hartley, and that they also claimed some
interest in the two-thirds included in the mortgage, by pur-
chase or otherwise, which was subordinate to the mortgage
lien; that in pursuance of a stipulation in the mortgage, com-
plainant, in October, 1874, reduced the mortgaged property
to possession; that the makers of the notes were insolvent;
that the engine was then in possession of W. H. Curtin as
agent of Gaar, Scott & Co. and that he refused to surrender the
possession thereof for the purpose of having the two-thirds
interest sold under the mortgage; that Curtin was insolvent,
irresponsible, and threatened to remove the engine from the
State and sell the same and appropriate the proceeds thereof.

William Bonner, F. M. Layson, W. H. Curtin, Daniel
Hartley and Gaar, Scott & Co. were made defendants, and the
bill prayed for superior lien on the two-thirds of the engine
and five-sixths of the thresher, etc.; also for an account and
decree for amount found due, and in default of payment a
sale of the mortgaged property. The bill was subsequently
amended by striking out that portion which charged that
Curtin was threatening to run the engine out of the State and
dispose of the same, and inserting in its stead a charge to the

effect that the engine had already been spirited away by Curtin and converted to the use of Gaar, Scott & Co.

Curtin and Gaar, Scott & Co. filed a joint answer, charging the notes and mortgage to be fraudulent, and denying the indorsement of the notes, the ownership of the engine as stated in the bill, the prior lien on the property, and the insolvency of Curtin and the makers of the notes. The answer also charged that complainant and others had theretofore brought an action of replevin against Curtin for the same engine, and that various issues were presented, and upon a trial on the merits they were all found for defendant, and this was insisted on as a bar to all proceedings under complainant's bill.

The answer was not under oath, and the cause was heard upon bill, answer, replication, exhibits and oral proofs. The court found specifically all the material facts charged in the bill to be true, that there was then due complainant on the notes and mortgage the sum of $306.64, for which a personal decree was rendered against Bonner and Layson. The court further found that the engine which had been shipped to Gaar, Scott & Co. at Richmond, Indiana, by Curtin, was, at the time it was so shipped, worth the sum of $300, two-thirds of which Gaar, Scott & Co. were decreed to pay to complainant within thirty days. And the master in chancery was ordered to sell the threshing machine, etc., and after deducting costs, pay five-sixths of the proceeds to complainant, and the other sixth to Hartley. And it was also provided that if the $200 to be paid complainant by Gaar, Scott & Co. and the proceeds of sale of the thresher should exceed the sum found due the complainant and costs of collecting property and sales, then, after paying complainant and Hartley, the balance should be brought into court for such disposition as the court might thereafter direct. And it was also ordered that the bill as to Curtin be dismissed, and that Gaar, Scott & Co., Bonner and Layson pay the costs. Gaar, Scott & Co. alone appeal.

There is really no controversy about the facts. The making of the notes and mortgage and their subsequent transfer

to complainant, and the ownership and several interests in the mortgaged property, and the shipping of the engine to Indiana by Curtin, and its exclusive appropriation and conversion by Gaar, Scott & Co., are all proved substantially as charged in complainant's bill.

On the part of appellants it was shown that after possession of the engine was taken by appellee, to-wit, on the 9th day of November, 1874, Gaar, Scott & Co. sued out of the circuit court of Clinton county a writ of attachment against Daniel Hartley, which was levied on "all the right, title and interest" of Hartley in and to the engine in question, and that subsequently a judgment was obtained in the attachment proceedings, and special execution issued thereon, under which Gaar, Scott & Co., on the 18th of January, 1875, bought Hartley's interest in said engine, truck-wagon, etc., by which purchase they acquired one undivided third interest in the same.

It was further shown, that on the 10th day of November, 1874, two attachment proceedings were commenced before J. B. Williams, a justice of the peace of Clinton county, against Daniel Hartley and William Bonner, one in favor of James Benson and Samuel Benson, and the other in favor of J. S. Anderson, in both of which proceedings judgments were obtained on the 11th of December following, and at the same time special executions were ordered for the sale of one undivided third interest of the engine in question, as the property of William Bonner. Executions were accordingly issued, and sale made as directed by the justice, on the 31st of December following, and Gaar, Scott & Co. became the purchasers.

It was further shown, that the engine in question was assessed for the year 1874 as the property of McClelland and Hartley, and also that by virtue of the collector's warrant, which bore date January, 1875, the same on the 9th of March following was sold by the town collector, and Gaar, Scott & Co. became the purchasers. It further appears that on the 19th day of January, 1875, Oliver Outhouse commenced an action of replevin in the name of himself, John North, George Cook

and appellee, against William H. Curtin, for the recovery of the portable engine in question.

To the declaration in the replevin suit the following pleas were interposed: *Non cepit, non detinet,* property in defendant, property in Gaar, Scott & Co., one-third of property in Gaar, Scott & Co., two-thirds of the property in Gaar, Scott & Co., and property in Bonner, Hartley and McClelland. There were issued on all these pleas and a general finding for defendant, and judgment against plaintiffs for costs and a writ of *retorno habendo* awarded.

Much of this evidence was irrelevant and should have been excluded by the court, but it was necessary to state the substance of it here in order to intelligently dispose of the points made by appellants as grounds for reversal.

While, as to the main facts charged in the bill, there is, as already stated, no controversy, yet some question is made as to whether complainant ever took possession of the engine under the mortgage; but the conflict in the evidence on this point is rather apparent than real. Complainant, in his testimony, says: "I took possession of the engine about the first day of October or last day of September, 1874, and placed P. P. Childs in possession of it as my agent. * * * Childs agreed to retain the engine for me, and was to notify me if any one interfered with it." On cross-examination he says: "Hartley brought the engine to the Carlyle Foundry for repairs. I found it there. I went to Childs, one of the owners of the foundry, and told him to look after it for me, and he said he would let me know if anything happened, and when Hartley's interest was attached he notified me of it." "This is all the possession I took." In view of the fact that the engine was a ponderous article, and therefore not easily removed from one place to another without expense or trouble, and that it was already on the premises of a third party claiming no interest in it, the testimony of complainant shows very clearly that the possession which he took of it was all the law requires.

° Now, the only evidence offered by appellants or which otherwise appears in the case, bearing upon this question at all, is the testimony of Hœger, the sheriff, and Curtin, each of whom testifies that he was present at the foundry when Hartley's interest in the engine was levied upon, and that Childs then said " that Hartley had left the engine there for repairs, but said nothing about Hurd, or about Hurd's taking possession, or having been there." All which might have been, and doubtless was true, yet it does not at all overcome the positive testimony of complainant, that he went to the foundry, found the machine there, and placed Childs in possession of it as his agent, and that Childs agreed to retain it, and notify him if any one interfered with it, which Childs subsequently did. It is clear then, that before Gaar, Scott & Co. acquired any right or interest in or to the engine, appellee had taken possession of it, under the mortgage; and hence it is wholly immaterial whether the mortgage was acknowledged before the proper officer, or whether, indeed, it was acknowledged at all or not. *Chipron* v. *Feikert et al.* 68 Ill. 284. And it, moreover, follows, that whatever rights Gaar, Scott & Co. subsequently acquired, they must be held subject to the rights of complainant.

A number of reasons are urged for a reversal of the decree in this case. It is first insisted that the mortgage was invalid by reason of not having been acknowledged by the mortgagor before some justice of the peace of the precinct in which the mortgagor resided.

That objection is not tenable, as we have just shown. The case of *Chipron* v. *Feikert et al.*, already cited, is conclusive of the question. Other cases might be cited to the same effect, but we deem it unnecessary to do so.

The proposition that it is unimportant whether a chattel mortgage is acknowledged at all or not, where possession of the mortgaged property is taken before the rights of third parties attach, is so obvious on principle that really no authority is required to support it.

The next objection urged by appellants is, that it was the duty of appellee, after hearing that attachments were levied on the property, to have made an effort to regain the possession, and not having done so he is now estopped from setting up any claim to the property. The doctrine is well settled that if the owner of property, being present, sees an officer levy an execution or attachment against another on his own property, or if he is present when his own property is about to be sold under such execution or attachment, it is his duty in either case to give notice to the officer, and all persons present for the purpose of bidding at such sale, of his rights in the property, and if he does not do so, and any one should purchase it at such attachment or execution sale without notice of the real owner's rights, the latter will be estopped from enforcing his claim to the property as against such purchaser or any one claiming through him. But we are not aware of the doctrine of equitable estoppel having ever been carried to the extent of requiring the owner of property which has been wrongfully levied upon and carried away by an officer, in his absence, to go at once in pursuit of it, or to institute legal proceedings to reclaim it, in order to prevent being estopped from asserting his rights whenever, within the Statute of Limitations, he may think proper to do so. In all cases of equitable estoppel, it must not only appear that the party to be affected by it, either by word or act, was guilty of some misrepresentation, but it must further appear that the party invoking the benefit of the estoppel, or the party through whom he claims, was deceived by such misrepresentation, and was thereby induced to do something to his injury which he would not have otherwise done.

Testing the case before us by this rule, there is certainly no ground for claiming that appellee is estopped from asserting his rights on the grounds suggested.

It clearly appears that Curtin, throughout the transactions we have related, was acting as the agent of Gaar, Scott & Co. It was, as is shown by his own testimony, through Curtin that

the several purchases of the engine by Gaar, Scott & Co., above related, were made; and Curtin himself testifies that he knew appellee claimed the property under the mortgage.

This being so, it follows that neither Curtin nor Gaar, Scott & Co. could have been misled by the conduct of appellee in not at once trying to reclaim the property, even if he had been under any obligation to do so. There is, however, a better answer than this to appellants' position.

At the time Gaar, Scott & Co.'s attachment against Hartley was levied on the engine, appellee had no power or authority to prevent the levy, or reclaim the property after the levy was made, even if he had been present and desired to do so. Hartley and appellee were at the time of the levy tenants in common of the property. Hartley's interest was subject to attachment, and the sheriff had the right to take exclusive possession of it. Indeed, he could not have perfected his levy without doing so. This right of the sheriff to take possession under a writ against one tenant in common only, to the exclusion of the others, is a burthen that belongs as an incident to that species of ownership, and whoever elects to hold property in that way must submit to the inconveniences to which it subjects him. See Freeman on Executions, secs. 125, 254; *Neary* v. *Cahill*, 20 Ill. 214; *Newhall et al.* v. *Buckingham*, 14 id. 405.

With reference to the sale of Bonner's equity of redemption in the property under the attachment proceedings, it is sufficient to say, appellants' rights were not at all affected by reason of appellee not interposing his superior right of possession for the purpose of selling under the mortgage and thereby preventing the sale under the attachment proceedings, as appellants were under no obligations to buy at either sale. It is to be presumed, from his conduct, that appellee was indifferent as to who might become purchaser or owner of Bonner's equity of redemption, and if so, he would have had no right, by reason of his interest as mortgagee, to have interfered with the sale, unless he felt that his rights and interest in the prop-

erty as mortgagee were thereby imperiled, and of that he alone was judge.

The creditors were proceeding to make Bonner's equity of redemption in the property available in the payment of his debts, and appellee, not feeling that his rights as mortgagee were thereby endangered, permitted them to do so, and now Gaar, Scott & Co., who purchased Bonner's interest under those proceedings, complain that appellee did not arrest them and prevent the sale by a foreclosure of his mortgage. We confess we can not see the force of the objection.

It is also urged that appellee took possession of the mortgaged property before the indebtedness was due, and that there is no evidence in the record showing that appellee was at that time apprehensive of losing his debt, or that there was any occasion for such apprehension.

It is difficult to see what interest appellants have in that question. Indeed, they have none. At the time possession was taken they certainly had no interest in the property. They had a demand or claim against Hartley, who at that time owned one-third interest in the engine, which they subsequently, on the 18th of January, 1875, bought at sheriff's sale, as already shown. If possession of the property was taken before default in payment, without sufficient reason, Bonner and Layson, the mortgagors, alone had the right to complain. When Gaar, Scott & Co. purchased Hartley's interest, as just stated, they then for the first time, so far as the record shows, acquired a right in the engine in question; and from that time forth it seems to have been in the hands of the officers of the law and appellants together, till it was finally taken out of the State by appellants and appropriated to their own use. There is nothing in this objection.

It is also urged that the court below erred in taxing appellants Bonner and Layson with the whole of the costs. It is sufficient to say with respect to this objection that the apportionment of costs was a matter lying with the sound discretion of the court below, and it is only in cases where this court can

say there has been an abuse of that discretion that it will interfere. We are satisfied there has been no such abuse of the discretion of the court in this case. See section 18, chap. 33, Rev. Stat. 1874.

It is manifest that the litigation in which these costs accrued mainly, if not altogether, grew out of the controversy between appellee and appellants with respect to their mutual rights in the engine. Curtin was a mere formal party, and perhaps he should not have been made a party; but as he was in possession of the property, the safer practice was to make him a party. Yet, as suggested by counsel for appellee, the costs could not, under the circumstances of the case, by reason of his having been made a party, have been increased to such an extent as to require a special order with reference thereto. The additional costs thereby occasioned must have been the veriest trifle.

With reference to Hartley, he was not in default or in any manner responsible for the litigation, and he certainly should not have been taxed with any part of the costs. We are of opinion the circuit court committed no error in taxing the costs.

It is next-insisted that appellee's interest in the engine was entirely divested and passed to appellants by virtue of the tax sale by the town collector on the 9th day of March, 1875. It already appears that long before the warrant was issued under which the tax sale was made appellee had taken possession of the property, and on what principle it is contended that appellee's rights can be affected by such a sale is beyond our comprehension. A collector's warrant becomes a lien on the property of the tax debtor from the time it comes to the collector's hands. It does not become a lien on the property of other persons merely because such property may have belonged to the tax debtor at the time the tax was levied. The assessment of a tax against the tax-payer, on account of a chattel which he owns at the time of the assessment, creates a debt against him, but does not create any lien against the

chattel; and if, after such assessment, and before the warrant for the collection of taxes comes to the collector's hands, the tax debtor in good faith sells or mortgages the same, the purchaser or mortgagee will be protected. Just when this warrant was made out, or when it came to the hands of the collector, does not appear from the record. It bears date January, 1875, but the day of the month is not stated. It may have been the first, last, or any intermediate day. But the record is wholly silent as to when it was delivered. The presumption is that it was not delivered before January, 1875.

It is claimed, because the property was assessed in the name of McClelland & Hartley, and the collector's warrant came to the hands of the collector before Hartley's interest was sold—though this is not proved—that although McClelland's two-thirds interest had been sold before that time, the sale by the collector had the effect to give the purchasers, Gaar, Scott & Co., a good title to the whole, and we are referred to *Forth* v. *Pursley*, 82 Ill. 152, in support of that theory.

We have carefully examined that case, and can see nothing in it that even looks in that direction. McClelland, at the time the warrant came to the officer's hands, no longer had any interest in the property, having disposed of all his interest in it on the 11th of July previous, and Hartley's interest at that time, supposing the warrant came to the hands of the collector the first of January, as claimed by appellants, was in the custody of the law, it having been, on the 9th of November previous, attached at the suit of appellants, and was subsequently sold by the sheriff on the 18th of January, and purchased by appellants, as already shown. Of course, upon this sale by the sheriff, under the attachment proceedings, the purchasers' title related back to the time of the levy of the attachment, namely, the 9th of November, and therefore appellants' title to Hartley's interest in the engine must be reckoned from the 9th of November, 1874.

So there was really no interest remaining in either of the

tax debtors to which the collector's warrant could attach, and
hence nothing passed by the tax sale.

It is further urged, that the court below should by the de-
cree have allowed appellants the benefit of the $23.50 paid
by them at the tax sale. If it be true that there was no lien
on the engine on account of the taxes due from Hartley and
McClelland, and that the then owners were under no legal
obligation to pay them, and that appellants acquired no title
to the property by reason of their purchase at the tax sale, as
we have just held, it follows that the amount paid by them
at such sale was in effect a voluntary payment of Hartley and
McClelland's taxes, for which appellee is in no sense respon-
sible.

It is further urged, that the judgment and proceedings in the
replevin suit settled the rights of the parties with reference to
the property in question, and that the matter must be now
regarded as *res judicata.* We do not so regard it. This
action of replevin was commenced, as will be remembered, by
Oliver Outhouse, in the name of himself, John North, George
Cook and appellee, on the 19th day of January, 1875. On
the day before, appellants had purchased Hartley's interest in
the engine at the attachment sale, and Curtin was in posses-
sion of the property as their agent on the 19th of January,
when the replevin suit was commenced.

The relation therefore of appellants and appellee with re-
spect to the property, from the date of that sale, was that of
tenants in common, and it is very clear that the parties could
not, while that relation existed between them, maintain re-
plevin against each other for the whole property, nor could
they maintain the action for their respective interests except
where one assumed the exclusive ownership and denied the
other all participation in its use or enjoyment, and inasmuch as
this action was brought for the whole of the property instead
of two-thirds, it is very clear the action was not maintainable.
But if the action failed for the reason here suggested, it surely
would be no bar even to another action at law, much less to

a proceeding in chancery like this. But the parties to this suit and to that are not the same, and the proceedings in that, for many other reasons, can not be regarded as a bar to this suit.

Finally, it is urged that the decree is erroneous in this,— that it did not order a sale of the engine. It is to be observed, in the first place, that the proofs abundantly show that appellants claimed the entire ownership of the engine and completely ignored appellee's interests. Appellee testifies that he was about to institute proceedings to enjoin Curtin from removing it from the State, and before he could do so, Curtin had already sent it to Indiana to appellants, and Curtin in his testimony states that he did so because he thought appellants had the best title, showing conclusively that it was the deliberate purpose on the part of appellants to wholly appropriate the engine to themselves. This clearly amounted to a conversion of the property if appellee saw proper to treat it so.

Now, in view of the fact that the evidence shows such a conversion of appellee's interest as would have enabled him to maintain an action of replevin or trover on account of such conversion, and inasmuch as the evidence further shows that when appellants were threatened with an injunction suit, restraining them from removing the property, they at once, through their agent, Curtin, removed it out of the State and beyond the jurisdiction of the court; and in view of the further fact, that the property in question was necessarily of great weight, difficult to handle, and could not have been brought back without incurring an expense disproportionate to any probable benefit appellants would have derived from having it returned, we are of opinion that the court properly required appellants to account for its value instead of requiring them to bring it back for the purpose of being sold.

Had the property been here within the jurisdiction of the court, doubtless it would have been proper to have ordered a sale, but it was not; and as appellants made no application to have the decree modified in that respect, or otherwise

offered to return the property within the jurisdiction of the court for purposes of sale or to abide the order of the court, we would not feel authorized to reverse the decree for that reason.

Some criticism of the decree is made by counsel for appellants, by reason of certain improper and inconsistent dates appearing in it, but they do not affect the merits, and are evidently clerical mistakes.

Upon the whole, we are of opinion that the decree of the court below is substantially right, and it is therefore affirmed.

*Decree affirmed.*