500     APPELLATE COURTS OF ILLINOIS.

VOL. 35.]     W. O. Tyler Paper Co. v. Orcutt-Killick Lith. Co.

# W. O. TYLER PAPER COMPANY
## v.
# THE ORCUTT–KILLICK LITHOGRAPHING COMPANY
### ET AL.

*Fraud—Mortgage—Failure to Record—Subsequent Indebtedness—Foreclosure.*

1. The mere neglect to record a real estate mortgage during the period that the mortgagor is incurring other debts, and the fact of giving judgment notes to certain creditors unknown to others, is not fraudulent, in so far as to justify allowing unsecured creditors to follow the proceeds of property upon which the liens of the other creditors were originally based.

2. Upon the contention by a creditor of a defunct corporation upon a debt contracted by it, while a certain mortgage upon its property to a person who had previously loaned it money was unrecorded, that it was entitled, having a judgment and unsatisfied execution, to follow the proceeds of the property into the hands of the mortgagee, he having taken possession under the mortgage, this court holds that the acts of the mortgagee, being neither fraudulent in fact or by construction of law, the decree dismissing the complainant's bill was proper.

[Opinion filed March 24, 1890.]

In ERROR to the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. TENNEY, HAWLEY & COFFEEN, for plaintiff in error.

Messrs. OSBORNE BROS. & BURGETT, for defendants in error.

GARY, P. J.   The preponderance of the evidence in this case fairly shows that on the 19th of October, 1886, the Lithographing Company, one of the defendants in error, owed the other, Henry Hartt, about $1,800. That on Sunday next before that date Hartt and the managers of the company met, and they told him that the business was running pretty well, but they needed money; and he told them to give him a mortgage and he would give them money; that he would keep

W. O. Tyler Paper Co. v. Orcutt-Killick Lith. Co.

it off from the record until they could not get along any more, and then they should come and tell him, and he would foreclose, so that they should not get into trouble.

The testimony as to this conversation was by a witness who was not speaking his native language, and who confessed his unfriendliness to Hartt, and it was not argued by the appellants, and indeed could not fairly be argued, that the witness meant, or that the parties intended, that the mortgage should be kept from the record as part of a scheme fraudulent in fact, devised to enable the company to obtain goods with the intention to not pay for them, and defraud creditors. The witness was himself one of the managers of the company, and in his testimony now insists that the company might have prospered but for the dissipation of another of the managers. It is the fair construction of his testimony that what the parties intended was simply that Hartt should have security without injuring the credit of the company, and that the company would in good faith endeavor to make a success of the business.

The mortgage was given, acknowledged the 8th day of November, 1886, and recorded the 29th of April, 1887. Before it was recorded, creditors, not parties to this litigation, had entered judgment against the company, but levied after it was recorded. Then Hartt took possession under this mortgage, and also took an absolute bill of sale; bought the judgment, and organized a new corporation to conduct the lithographing business.

It is proved that the appellants applied to a mercantile agency for information as to the financial standing of the lithographing company while this mortgage thus remained concealed; that the mercantile agency applied to the dissipated manager, who made a statement grossly false, and that the appellants extended the credit which is the basis of their claim upon their belief of the truth of that statement. But of that whole transaction Hartt was entirely ignorant. He had no notice that any one connected with the company made, or would, or intended to make, any statement of its condition.

The appellant obtained no lien upon the property of the

lithographing company while it remained theirs, but claim that, having a judgment and unsatisfied execution against the company, upon a debt created while the mortgage lay concealed, they are entitled to follow the proceeds of the property into the hands of Hartt on the ground of fraud.

The mere neglect to record real estate mortgages during a period that the mortgagor is incurring other debts, and giving also judgment notes of which such new creditors have no notice, it is held, is no fraud, enabling such new creditors to follow the proceeds of the personal property of the debtors, sold under judgment and execution upon the notes, into the hands of the creditors who thus held undisclosed security. Field v. Ridgely, 116 Ill. 424.

A similar case as to judgment notes is Hegele v. Nat. Bk., 129 Ill. 157. In Read v. Wilson, 22 Ill. 377, it was decided that a chattel mortgage on a stock of goods kept for sale in a retail trade, and providing that the mortgagor might retain possession unless the mortgagee should deem the property in danger, etc., and which was therefore void as against creditors, under the decision in Davis v. Ransom, 18 Ill. 396, was yet valid against the levy of an execution, the mortgagee having taken possession before the levy. It did not appear, and probably was not the fact, in that case, that the debt to be collected under the execution, accrued after the execution of the mortgage. In cases on the law side of the court it has been many times held that possession taken under a chattel mortgage, invalid from non-compliance with statutory details, secures priority over other claims upon the property, not liens upon it when possession was so taken. Chipron v. Feikert, 68 Ill. 284; Frank v. Miner, 50 Ill. 444; and the same rule was applied in equity in Gaar v. Hurd, 92 Ill. 315.

But in none of the cases was the feature of intervening credit, if it existed, made a subject of discussion. An arrangement in writing, probably secret (though the case does not show it), when the new credit was given, by which the vendee has possession of stock of goods for sale at retail, the title to remain in the vendor until he is paid, with the right in him to take possession of the stock, and all additions to it,

upon default in payment, is not fraudulent in fact on the part of the vendee, so as to be the ground for an attachment against him.   Shove v. Farwell, 9 Ill. App. 256.   Here the only claim of the appellants must be that the conduct of Hartt was such as in fact was fraudulent, or that by construction of law, it becomes such.

It is *non sequitur* to hold that to do that which, without agreement, is to be regarded, if the Supreme Court made no mistake in Field v. Ridgely, 116 Ill. 432, as "the forbearance of a creditor to crush out a struggling debtor upon the first opportunity, with a view of enabling him to overcome business misfortunes," " so long as the creditor's conduct is characterized by good faith," and " such forbearance should be regarded by the courts with favor," does, by the promise of the creditor so to do, become reprehensible as fraud.

The bill was rightly dismissed, and the decree is affirmed.

*Decree affirmed.*

GARNETT, J.   One of the witnesses for the appellants testified that before the mortgage was given to Hartt he promised the president and secretary of the Orcutt-Killick Lithographing Company, that if a mortgage was given him to secure his debt he would not place it on record until the company could not get along any more, and then they should tell him and he would foreclose.

Hartt testified on this point, simply, that he made no such agreement.   He does not deny that the conversation occurred as sworn to by appellants' witness.   He merely swears to a legal conclusion, and such testimony does not tend to prove any fact out of which the agreement arises.   Barrett v. Hinckley, 124 Ill. 34.

So that the evidence of Hartt's promise stands uncontradicted.   The chattel mortgage covered, substantially, all the assets of the company, and provided that the possession thereof should remain with the mortgagor until default in payment.   Hartt kept his promise until after the debt to complainant was contracted, and the property, during all that time, was in possession of the mortgagor.

Now, the question is, whether a creditor who, by means of the promise shown by the evidence, brings into existence the chattel mortgage which puts the fortunes of the debtor within his control, may, by recording the instrument, avail himself of the advantage against others who have, subsequently, sold goods to the debtor on the faith of his apparently absolute ownership of the property. That the party who conceals his lien under such circumstances must suffer rather than the innocent creditor who, in the usual course of business, trusted to appearances, is satisfactorily shown in Hilliard v. Cagle, 46 Miss. 309; Gill v. Griffith, 2 Md. Ch. 270; Standard Paper Co. v. Guenther, 67 Wis. 101; Sanger v. Freie Presse Co., 41 N. W. Rep. (Wis.) 436; Walton v. First Nat. Bk., 2 Pac. Rep. (Col.) 440. See also, Hildeburn v. Brown, 17 B. Mon. 779; Bump on Fraudulent Conveyances (3d Ed.), 39; Wait on Fraudulent Conveyances, Sec. 235.

This is but the application of the well-settled principle that a man is responsible not only for the direct effect of his acts, but likewise for all the consequences which may naturally and reasonably be expected to flow from them. The company being actively engaged in business, Hartt must have known that, in the usual course of its business affairs, others would extend to it credit on the strength of its ownership of property in its possession, against which the record disclosed no lien.

The case differs from that where the promise to withhold from record is made by the mortgagee after the delivery of the mortgage. Yet, even in such a case, if the promise is kept and subsequent unsecured debts are contracted by the mortgagor to the parties having no notice of the secret lien, I am not prepared to say that the recording of the mortgage afterward will operate to postpone such subsequent creditors.

Here the property is not sufficient to satisfy appellant and Hartt both, and, in my opinion, Hartt should be the loser.