## Noble B. Ridge, Appellant, v. Ferdinand Giffrow, Appellee.

### Gen. No. 6,860.

1. TROVER AND CONVERSION, § 27*—*title necessary to maintain.* In order to maintain trover, plaintiff must show in himself either a general or special property in the thing converted and a right to immediate and unconditional possession, not dependent upon any act to be done by him.

2. TROVER AND CONVERSION, § 27*—*right to maintain.* G had certain road machinery which R desired to buy. A sale was agreed upon and the purchase price was to be paid in cash. The price was not paid as R desired to see it work first. Nothing further was done and a few days later G sold to other parties. *Held,* that R could not maintain trover to recover the value of the property.

Appeal from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed March 17, 1921. Rehearing denied April 6, 1921.

JACOB CANTLIN and CARL E. SHELDON, for appellant.

J. J. LUDENS, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

This is an action of trover commenced in the circuit court of Whiteside county, prosecuted by the appellant, Noble B. Ridge, to recover the value of personal property from the appellee, Ferdinand Giffrow, which the appellant alleges the appellee wrongfully converted to his own use, after he had become the owner of it by purchase. There was a trial by the court. The court found the issues in favor of the appellee, and rendered judgment accordingly. This appeal is prosecuted from the judgment. The proof

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

shows that the appellee in October, 1919, owned some
machinery, which he had been using in the construc-
tion of concrete roadways. It consisted of a mixer,
and other mechanical attachments and equipment
connected therewith. The appellee had concluded
to quit the business, and therefore desired to sell this
outfit. Appellant was also engaged in building roads,
and had learned that the appellee desired to sell the
property in question, and therefore went to see him
at his home. The appellee there informed the ap-
pellant as to the cost of the mixer, and the other parts
of the machinery, which amounted to the total sum
of $4,649.72. He offered to sell the entire outfit to
the appellant for $3,850, but on condition that the ap-
pellant would let him know by 10 o'clock the next
morning what he wanted to do about buying it. The
next morning was Sunday, October 12, and the ap-
pellee's son on that morning went to appellant's house
to ascertain what the appellant had decided to do.
The appellant informed the son that he had concluded
to offer $3,800 for the outfit, and that the sale was
to be a cash sale. The son thereupon called up his
father, the appellee, and had a talk with him about
the matter, and, according to the testimony of appel-
lant, as a result of this conversation the son said to
appellant, ''He (meaning the appellee) will accept it.''
But according to the son's testimony, he told the ap-
pellee that appellant would take the mixer provided
it ran to his satisfaction, if appellee would throw off
$50 on the magneto; and that it would be a cash deal;
and that the appellee thereupon gave the following
direction over the phone: ''If he gives you a check,
take it.'' That he thereupon informed the appellant
what his father had said to him; that he was to take
a check or cash for the property, and that the appellee
would throw off the $50; that thereupon appellant
replied that he had not seen the mixer run yet to his
satisfaction, and he would like to get out the following

day to see it run; that he said he thought he would take the mixer, provided it ran to his satisfaction. It does not appear that anything further was done about the matter of the alleged sale by either party, but, in about a week afterwards, the appellee sold the machinery to another party; and this sale to the other party is the alleged wrongful conversion which is made the basis for this action of trover. "Trover is a possessory action, and in order to maintain it, the plaintiff must show in himself either a general or special property in the thing converted." *Davidson v. Waldron,* 31 Ill. 120.

"And it is essential, that the plaintiff at the time of the conversion should have not only the right of property in the chattel, but also the right to its immediate possession. (Chitty Pl. 149; *Bailey v. Godfrey,* 54 Ill. 509; *Forth v. Pursley,* 82 Ill. 152; *Owens v. Weedman,* 82 Ill. 409; *Bertholf v. Quinlan Bros. & Co.,* 68 Ill. 297.) The plaintiff must show a legal title. His right to possession must be immediate, absolute and unconditional, and not dependent upon some act to be done by him. * * * Cooley in his work on Torts says on p. 445: 'When, therefore, it is said that the plaintiff in trover must have had, at the time of the conversion, the right to the property, and also the right of possession, nothing more can be intended than this: That the right of which he complained to have been deprived must have been either a right actually in possession, or a right immediately to take possession. It is not enough that it be merely a right of action, or a right to take possession at some future day.' " *Frink v. Pratt,* 130 Ill. 327; *Union Stockyard & Transit Co. v. Mallory, Son & Zimmerman Co.,* 157 Ill. 554.

It is clear from the testimony, even on the assumption that the transaction between the parties amounted to a sale of the property, something still had to be done by the appellant before he was entitled to pos-

session, namely, the payment of the purchase price, or at least a legal tender of the amount of money agreed upon. There is no claim that this was done by the appellant; no tender of any kind was made by him until after appellee had sold and transferred the property to some one else. And appellant testified that the reason he did not pay appellee cash at the time of the alleged purchase was because when he was over at appellee's house the Saturday evening before the purchase, the appellee showed him a contract with Mr. Hillsman which did not show, "that the machine had been completely paid for; and that he was going to see that the papers were all cleared up before he paid a dollar."

For the reasons stated, it is clear that the appellant had no right to recover in this action. The finding and judgment of the court were therefore proper, and the judgment is affirmed.

*Affirmed.*