BURR ROBBINS AND D. K. TENNEY

v.

THE J. W. BUTLER PAPER COMPANY ET AL.

*Insolvency—Conspiracy—Attorney and Client—Assignment of Errors —Costs.*

1. Only appellants can assign errors.

2. Cross-errors can only be assigned on decrees appealed from.

3. An attorney who represented several creditors of an insolvent corporation procured judgment notes for the claims held by him, and also for a creditor who held, as collateral, the notes of the corporation to his clients, entered judgments thereon, filed a creditor's bill, had the corporate assets sold by the receiver appointed therein, and bought in the property himself. The corporate stock was all controlled by one man, who gave the attorney information as to the affairs of the corporation, and whose wife was its principal creditor. It was not shown that the attorney had notice that the claims represented by him were fraudulent. *Held*, that he was not accountable to the other creditors of the corporation for the property bought by him, the evidence not sustaining a charge of conspiracy.

[Opinion filed March 24, 1890.]

Appeal from the Superior Court of Cook County; the Hon. Henry M. Shepard, Judge, presiding.

Messrs. Cratty Bros. & Ashcraft, for appellant Burr Robbins.

Mr. A. W. Green, for appellant D. K. Tenney.

Messrs. McClellan, Cummins & Moulton, for appellee The J. W. Butler Paper Company.

Messrs. Tenney, Hawley & Coffeen, for appellee W. O. Tyler Paper Co.

Mr. R. A. Childs, for appellee Albert Hayden.

Messrs. Grosscup & Wean, for appellees C. B. Cottrell & Sons.

Gary, P. J.   The version relied upon by the appellees to support the decrees appealed from, or so much as is regarded as material for the present discussion of the great mass of facts relating to which the record contains evidence, is as follows:   That in the month of February, 1884, John B. Jeffery substantially incorporated himself as the John B. Jeffery Printing Company, with a nominal capital of $150,000 as the equivalent of property appraised at $120,492.20, and worth $54,092.20 and good will of a former business appraised at$ 50,000, of which no value is shown; that $100,000 of stock was issued to him, and $50,000 to others under his control; for the latter his wife professed to pay $50,000 to the company, and that amount was, on the company's books, credited to him, though no money was paid; that even then he intended to use the control he had of the company as a means to commit frauds; that he caused judgment notes to a large amount, bearing eight per cent interest, to be issued by the company to his wife, in exchange for parcels of her stock transferred to persons from whom the company bought goods; that he retained the appellant Tenney as attorney in behalf of his wife,

and as such attorney kept him informed of the affairs of the company, and of claims made by others against it; that among such claims were those of Hayden, holding $15,000 of stock received from Mrs. Jeffery in exchange for real estate conveyed to her by Hayden, under fraudulent representations by Jeffery, who made the trade, and which trade Hayden wished to rescind, and was likely to make trouble; also the claim of Cottrell & Sons, who held $7,600 of stock transferred by Mrs. Jeffery, and which they claimed that the company was bound to take from them and pay for; and that Jeffery had made divers threats as to what he would do to the prejudice of the company and its creditors.

On the 19th day of May, 1886, after an interview between Tenney and the attorney for Cottrell & Sons, at which, what took place is the subject of conflicting testimony, Tenney received from Jeffery part of the judgment notes against the company for more than $50,000, and also a check on the bank for Mrs. Jeffery for the balance the company had there, $4,011.22; went to the bank and got a note of $25,000 which the bank held against the company and for which the bank also held as collateral security another part of the judgment notes to Mrs. Jeffery, and these Tenney also got; returned to Jeffery and got a judgment note for the note to the bank, in such shape that he could enter a judgment upon it in his own name; also a judgment note for $5,000 in favor of Robbins, which was either then executed, or if it had been executed before, was still in the hands of Jeffery; and also a judgment note of more than $22,000 in favor of the W. O. Tyler Paper Co. Upon all these notes he entered judgments, issued executions and levied part of them, more than $75,000 in amount, immediately upon the property of the company, then procured a return of *nulla bona* upon a part of the executions, filed a judgment creditor's bill, and had a receiver appointed, to whom all the property of the company, including what the sheriff had levied upon, was assigned and surrendered, and thereafter bought, in satisfaction of these judgments, from the receiver, under the authority of the Superior Court of Cook County, where the cause was pend-

ing, all of the assets of the company. Before this sale was made, the present bill of the Butler Company was filed in the same court, and afterward transferred to the Circuit Court.

The theory of the appellees and the ground upon which the decree appealed from went, is that there was a conspiracy to ruin the printing company, defraud its creditors not represented by Tenney, and the stockholders other than Jeffery and his wife, and divert all the assets of the company to the formation of the new one; that as in the execution of the purposes of that conspiracy the assets were applied at a fixed price to the satisfaction of the judgments, the parties who so applied them are to be held as having wrongfully converted them to their own use, and should return them to the receiver in this case, who is appointed as the successor of the one who sold them; that as the assets are not accessible for a return in specie, those parties must pay to the receiver the price at which they took them. Some question is made upon the authority by which the judgment notes were executed. If the case of Martin v. Judd, 60 Ill. 78, does not govern this on that point, the objection in point of law, to the authority to execute the notes, is not a ground in equity for these decrees. There is no question as to the actual indebtedness of the company to the bank and Robbins.

The fact that the Tyler Paper Company was liable upon outstanding commercial paper which belonged to the printing company to pay, and which it was easy to foresee that the paper company would have to, as in fact it did, pay, is undisputed. That was a good consideration for the judgment. Truscott v. King, 6 Barbour, 346; Speer v. Skinner, 35 Ill. 282. That Tenney had the authority of all the parties who obtained judgments, except Robbins, to act for them, is not denied. There is no evidence tending to show that he had any notice of whatever evil intention Jeffery had toward anybody, or of anything which could affect the consideration, validity or good faith of the notes to Mrs. Jeffery. There is no showing as to what the market or intrinsic value of everything applied to the satisfaction of the judgments was, but it

is probable, on the whole case, that it was less than the amount of the judgments.

Tenney having been retained for Mrs. Jeffery by Jeffery, who did all business in which she was interested, must necessarily, to obtain any information affecting her interests, go to Jeffery for it.

Assuming the validity of her claim against the company, which assumption must be made in considering the case of Tenney, because, as before said, there is no evidence that he had any notice to the contrary, there is no act of Tenney shown by this record which is inconsistent with the degree of fair dealing that the law requires of parties in the selfish protection of their own interests. As the bank held a part of her notes as collateral security, it was essential to the collection of her whole debt that the company should pay the bank.

Representing her in so large a claim against the company, it was his professional duty to inform himself, so far as he could, of every circumstance that could affect the ability of the company to pay her. All his consultations with Jeffery were such, so far as any evidence shows, as were in the line of the discharge of that duty. The law permitted Mrs. Jeffery to obtain payment of her debt, if *bona fide*, from the company, though every other claim upon it should remain unsatisfied. As her attorney, with no notice that the debt was not *bona fide*, it was the duty of Tenney to use all his professional skill in obtaining such payment.

In addition to the fact of his frequent, probably almost daily consultations with Jeffery, stress is laid upon the testimony of Tenney himself that he intended, when he parted from the interview with the attorney of Cottrell & Sons, to get his receiver in first—a friendly receiver.

Leaving out of view anything in the record tending to explain or qualify this statement, and considering it in connection with the fact that the assets were used in organizing a new corporation, in the formation of which he participated, the result is that he then contemplated, what a very slight knowledge of business would enable any one to foresee, that

the only way in which a practical satisfaction of the more than $100,000 of debts he was authorized to collect would be secured was by appropriating the assets of the company to some new enterprise for continuing the same business in which they were then used.

The assets were a large printing establishment.

It is probable, if not certain, that to break up the business, and sell at public auction piecemeal the tangible property which a sheriff could levy upon and sell, would have been such a sacrifice of the property that the judgments, after applying the proceeds of the sale and all that a receiver could get out of the intangible assets, would have remained unsatisfied to a large extent without any resulting benefit to anybody. In principle, though not in degree, it would have been like selling a railroad under foreclosure, in parcels.

This case presents the unusual feature that Tenney and Robbins are required to pay in cash to the receiver the amount which they acknowledged to have received in satisfaction of *bona fide* debts, which were thereby discharged, and with no evidence whatever of the value of what they received. But this need not be enlarged upon.

The only ground for charging Tenney is that his acts, which were lawful expedients for collecting, under the circumstances, the debts which he had authority to collect, and of any objection to the validity of any of which, there is no evidence that he had any notice, are to be presumed, without evidence, to have been for the purposes of carrying into effect the evil designs of Jeffery, of which, if they existed, there is also no evidence that Tenney had any notice.

It is not so probable, if the notes to Mrs. Jeffery were invalid, that an attorney employed by Jeffery in her interest to collect them, would have been informed by him of that invalidity, that the probability can supply the want of any proof of such information.

There is no need to discuss the case of Robbins. He was not there, and had no knowledge in detail of what was being done. He is only charged with responsibility for the acts of Tenney in his behalf, and if Tenney is justified he is discharged.

Several parties have separately filed cross-errors, but none of them can be considered. The appeals of Robbins and Tenney, though docketed here as one case, are in fact separate for each of them. On those appeals, they only can assign errors. Beal v. Harrington, 116 Ill. 113.

And cross-errors can be assigned only on the decrees appealed from. Walker v. Pritchard, 121 Ill. 221.

None of those cross-errors say the decrees against Robbins and Tenney do not go far enough. All those cross-errors assigned relate to matters in which neither Robbins nor Tenney have any interest.

As to Robbins and Tenney the decrees are reversed and the cause remanded to the Circuit Court with directions to dismiss the bill as to them, at the cost of the J. W. Butler Paper Company.

The costs made in this court by the separate cross-errors and briefs of Hayden, Cottrell & Sons, and the Tyler Paper Company, and by the appeal bond which Jeffery filed, will be paid by those parties respectively. The residue of the costs in this court will be paid by the J. W. Butler Paper Company, and Hayden, Cottrell & Sons jointly.

*Reversed and remanded.*