## EMMA J. JEFFERY

v.

## J. W. BUTLER PAPER COMPANY ET AL.

*Insolvency—Conspiracy—Decree—Agency.*

1. Where there is litigation pending in a court of equity to settle conflicting claims to property, or to subject property to the operation of a decree, for almost any, if not every good reason, the power of such court to provide for the safety of the property pending the litigation, and make its ultimate decree effectual, and to that end to put the property into the hands of a receiver, is beyond question.

2. A decree requiring a party to deposit with a receiver, in the nature of a security for the performance by that party of the final decree in the case, the value of the property alleged to have been fraudulently disposed of or converted, should not be entered.

3. The pecuniary responsibility of a wife for anything by her acquired through transactions by her husband on her account, resulting from the character thereof, remains as if she had full knowledge of each of those transactions, and of the manner of them, and had authorized or ratified them.

4. In proceedings touching the entering of judgments by confession upon notes given by a corporation to one of its stockholders, the wife of its principal stockholder, it being contended that such act was in the pursuance of a design to get the affairs of the company in such shape that its assets could be converted to her use, this court holds that the decree directing her to pay into the hands of the receiver the amount that was applied in satisfaction of her judgments was premature, and that she must prorate

with other creditors, and return the excess in her hands over and above the sum to which she is entitled.

5. An appeal does not lie from an interlocutory decree.

[Opinion filed May 28, 1890.]

In error to the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding.

Messrs. Barnum, Evans & Barnum, for plaintiff in error.

Messrs. McClellan, Cummins & Moulton, for J. W. Butler Paper Company.

Mr. R. A. Childs, for Albert Hayden.

Gary, P. J.  For the purposes of this opinion the facts will be condensed substantially from what the defendants in error state them to be, but that does not require the court to adopt the construction as to motives and intentions, by them put upon the facts, or to concur in the inferences they draw.

In December, 1883, a fire occurred in the show-printing establishment of John B. Jeffery, in Chicago, and from insurance upon it he received $66,500.  The property saved from the fire was worth $29,092.20.  To this he added about $25,000 in new materials and machinery.

In February, 1884, he organized the John B. Jeffery Printing Company, putting in the property, old and new, at a valuation of $120,492.20, and the good will of his business at $35,000, the company assuming debts, which he owed, of $5,492.20, leaving a net sum of $150,000 as the nominal value of the property of the company, tangible and otherwise. For this, $150,000 in stock was issued, of which Jeffery himself took $100,000; $40,000 was issued to the plaintiff in error, to her father $9,700, her brother, the bookkeeper, and the attorney of Jeffery $100 each, making up the total of $150,000.

For the $50,000 not issued to Jeffery himself, the books of the company show that $50,000 in money was paid, by whom was not stated, and that Jeffery took the money out the same

day. The decree finds that Jeffery "purported" to give to his wife $50,000 of the insurance money, which she "in form turned over to the company in payment for the remainder of the stock" not issued to Jeffery himself.

May 19, 1886, judgments by confession to the amount of over $100,000 were entered against the company, of which upward of $50,000 were in favor of plaintiff in error. She is not shown to have had any agency in, or actual knowledge of, the entry of these judgments at or before the time they were entered. Her husband conducted all business done in her name, and, so far as is shown, without consulting her. To the satisfaction of those judgments the assets of the company were applied, and afterward disposed of in a manner stated in Robbins v. Butler Paper Co., 35 Ill. App. 512. Much of the apparent indebtedness of the company to her arose from the purchase by Jeffery of goods for the use of the company, paid for with stock in the company transferred by her, for the nominal value of which stock Jeffery made to her judgment notes of the company, bearing interest at the rate of eight per cent. The defendants in error put in testimony that Jeffery had made threats as to what he would do to the prejudice of the company and its creditors. From these threats, the alleged over-valuation of the assets in the formation of the company, the alleged fictitious payment of the $50,000 of stock issued to the plaintiff in error and others as before stated, the transmutation of such stock to such a large extent into the indebtedness of the company with eight per cent interest, the warrants of attorney by which judgment could be entered at once, and from the entry of judgments when no creditors were putting the company to any trouble, by an attorney retained by Jeffery for his wife, and the subsequent disposition of the assets, as stated in the Robbins case, it is forcibly argued by the defendants in error, that from the time the company was organized in 1884, it had been the design of Jeffery to get the affairs of the company into such a shape that the assets of the company could, to a large extent, be converted to her use to the exclusion of other creditors and stockholders.

Jeffery v. Butler Paper Co.

Very considerable quantities of the stock had got into the hands of purchasers, besides what she had transferred for goods sold to the company.

It was inadvertently stated in the opinion in the Robbins case that the bill of the Butler Paper Co. was filed before the application of the assets of the company to the satisfaction of the judgments entered May 19, 1886. The original bill was so filed, but the decree now under review was entered upon an amended and supplemental bill filed in June, 1887, ten months after the acts of which complaint is made were consummated.

By that decree, which though appealable by reason of the present execution, in effect is but interlocutory, for it does not determine who will be entitled to any relief, nor fix and determine the rights of any party to the suit, Mrs. Jeffery was directed to pay to the receiver the amount that was applied in satisfaction of her judgments. The decree states that because of the delay in filing the supplemental bill and the intervening interests of innocent third persons, it would be inequitable to decree a return to the receiver of the property itself which was so applied, and that the amounts so applied should stand in the place of the property. In any aspect in which this case can be viewed this decree against her is premature.

Where there is litigation pending in a court of equity to settle conflicting claims to property, or to subject property to the operation of a decree, for almost any, if not every good reason, the power of such court to provide for the safety of the property pending the litigation, and make its ultimate decree effectual, and to that end to put the property into the hands of a receiver, is beyond question. But here the property had gone where the decree says it would be inequitable to follow it. If the plaintiff in error has committed frauds, the parties injured are entitled to reparation, but a court of equity does not administer punishment or inflict penalties. The extent of the reparation, when ascertained, will be the measure of the liability.

There is no precedent for a decree requiring a party to

deposit with a receiver, in the nature of a security for the performance by that party of the final decree in the case, the value of the property alleged to have been fraudulently disposed of or converted. If the proceeds of the property could be followed in specie, the identity of the proceeds with their source made clear, notwithstanding any mutation of features, a delivery of them to the receiver would be in the ordinary course of chancery proceedings and might be properly required and enforced.

As stated in the opinion in the Robbins case, the application of the assets of the company to the satisfaction of the judgments, was made under the authority of the Superior Court of Cook County, where this cause was then pending, and that court then required bonds for the repayment to the receiver of the amounts so applied " in case the court should ultimately decree the repayment of the same or any part thereof." The defendants in error urge that this is an agreement to repay and justifies the decree. The argument goes too far. If this decree can stand upon that ground alone, without regard to other circumstances, no decree for such repayment could be erroneous, or the subject of complaint by the parties against whom it was rendered.

To recur now to the general merits of the case. There is no evidence that Mrs. Jeffery had any personal agency in, or knowledge of, any of the business transactions conducted in her name, and on her behalf, by her husband.

This acquits her of any charge of participation in his actual evil design, if any he had, unless it is to be presumed, in law or fact, that if a man is a knave he wants his wife to know it. But her pecuniary responsibility for anything by her acquired through transactions by her husband on her account, resulting from the character of the transactions themselves, remains as if she had full knowledge of each of those transactions, and of the manner of them, and had authorized or ratified them.

Now it is a principle of almost universal application that a man may not be agent of both parties, in business between them. Story on Agency, Sec. 211. Also that officers of corporations occupy a fiduciary relation, and may not deal with

themselves as agents of the corporation.  Ibid.; Morawetz on Corporations, Sec. 517; and their dealings with near relations are upon very much the same footing.  Davoue v. Fanning, 2 Johnson's Chy. 252.  The latter principle was conceded, but the Superior Court got the case out of it upon the facts in Walker v. Carrington, 74 Ill. 446.  It was applied in Tyler v. Sanborn, 128 Ill. 136.  It may, therefore, very properly be held that the judgment notes and the judgments entered upon them are voidable in the interest of other creditors of the company who get nothing; that she is entitled only to prorate with them.  But a court of equity decrees no forfeitures.  In setting aside acts done in violation of its rules as to trusts, it requires that the consideration be restored.  I. L. C. in Eq., 234–257 to 260.

As between her and other creditors of the company who may come in under the bill of the Butler Paper Co., there should be an inquiry as to the actual value of all the assets applied in the satisfaction of all the judgments of May 19, 1886, at the time they were so applied, and she should be charged with such portion of that value as will be in the same ratio of the whole, as the amount applied to her judgment bears to the whole amount so applied; also an inquiry as to the actual indebtedness of the company to her for money loaned, with interest thereon at six per cent, and also the actual value to the company of goods which the company obtained for considerations which she supplied, for all of which she should be treated as a creditor; also an inquiry as to the amount due to other creditors who may come in under this bill; and then as to the amount to be charged to her as above stated, she must prorate with those creditors, and return the excess in her hands, so that they may be on an equal footing with her.

There is nothing in this record which indicates that there will be anything left that calls for any directions as to relief against her by stockholders; the organization of the company upon an inflated valuation of the assets, however great, injured nobody, and had no tendency to injure anybody when it was done.  If was a family matter, among themselves, and if anybody was deceived, it must have been Mrs. Jeffery herself,

who ostensibly paid $50,000 for one-third of the stock. Whether there was actually any money used in that way, or it was only bookkeeping, makes no difference. Jeffery owned the whole plant, and took but two-thirds of the stock. Why he did not take the other third, concerned only himself and those who did take it. If by subsequent transactions anybody has been induced to take any of her stock, and has reason to complain, that should be the subject of a separate suit by that party for such relief as he may be entitled to. Cross-bills have been filed in this case by parties who make such complaint; they are not germane to this litigation. Their stock was full paid, upon which there was no individual liability, and so they have no standing, upon analogy to the rule of inverse order of alienation, that the creditors should first exhaust their remedy against her before pursuing them.

The decrees upon those cross-bills were purely interlocutory—that they were not entitled to the relief prayed, but retaining their bills for such relief as could be given on final hearing. From such decrees an appeal will not lie, and being such as original errors could not be assigned upon, they can not be the subject of cross-errors. They in no way affect the decree against Mrs. Jeffery.

The decree against Mrs. Jeffery must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

                                    *Reversed and remanded.*