Syllabus.   Brief for the Appellants.

HUGH CRAWFORD *et al.*

*v.*

THOMAS M. LOGAN.

*Filed at Mt. Vernon February 3, 1881.*

1. CREDITOR'S BILL—*by whom.* Where a party indorses a note upon which judgment is obtained by the assignee, and on failure to collect the same, he pays the assignee the amount of the judgment, taking an assignment thereof to himself, he will be subrogated to all the rights of the judgment creditor, and may maintain a creditor's bill for the collection of such judgment.

2. FRAUDULENT CONVEYANCE—*settlement upon wife.* A settlement upon a wife or child by a voluntary conveyance, without consideration, where the grantor is insolvent, or where he is largely indebted and fails to retain property which proves sufficient to discharge his debts, can not be sustained.

3. But where the grantor is solvent, and the settlement is made in good faith, without a fraudulent intent, the amount being a reasonable provision to be made, due regard being had to the grantor's estate, it can not be avoided by subsequent creditors, but is void only as against creditors existing at the date of the conveyance, unless the settlement is made with a view to future fraudulent indebtedness.

4. RECORDING LAW—*creditors must have a lien to avoid an unrecorded deed.* The section of the Conveyance act which declares that all deeds, etc., for land, shall be void as to creditors and subsequent purchasers of the grantor, without notice, until they are recorded, does not embrace a creditor who has not reduced his debt to a judgment, or acquired a lien on the land in some other way. If the deed is recorded, or the grantee is put in possession, before the acquisition of a lien by judgment or otherwise, it will pass the title as against creditors.

APPEAL from the Circuit Court of Jackson county; the Hon. OLIVER A. HARKER, Judge, presiding.

Mr. J. B. MAYHAM, for the appellants:

Thomas M. Logan, being a mere volunteer creditor, could not maintain the bill. *Miller et al.* v. *Davidson,* 3 Gilm. 518; *Newman et al.* v. *Willetts,* 52 Ill. 98; *McConnel* v. *Dickson et al.* 43 id. 99.

· The rule is, that an indebtedness can not reach backward beyond its inception or creation to disturb titles to property.

"A settlement upon a wife by a voluntary conveyance, without consideration, the grantor being solvent at the time, and made without any fraudulent intent, can not be attacked by a subsequent creditor, and is only void against creditors existing at the time of the conveyance, if the grantor was insolvent at the time of its execution." *Moritz* v. *Hoffman et al.* 35 Ill. 553; *Pratt* v. *Myers,* 56 id. 23.

There must be manifest fraud established against the defendants, and, in order to disturb these conveyances, that fact or fraud must be traced to a debt already incurred, or a deliberate design in contemplation of indebtedness thereafter to be incurred.

We refer, generally to the following cases: *Wooldridge* v. *Gage,* 68 Ill. 157; *Pratt* v. *Myers,* 56 id. 23; *Patrick* v. *Patrick,* 77 id. 555; *Sweeney* v. *Damron,* 47 id. 450; *Moritz* v. *Hoffman,* 35 id. 553; *Newman* v. *Willetts,* 52 id. 98; *Miller* v. *Davidson,* 3 Gilm. 518; *Annis* v. *Bonar,* 86 Ill. 128.

So far from the record in this case establishing either of the foregoing propositions, it discloses that Hugh Crawford was, at the time of the conveyance of the property in question, free from debt, or nearly so, with an abundance of means to pay all his creditors, with no prospect or anticipation of incurring any liabilities.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Thomas M. Logan, in the circuit court of Jackson county, against Hugh Crawford and Elizabeth Crawford, to subject certain real property in the town of Murphysboro to the payment of a judgment which Elviria Logan had recovered in a certain action against John Hessick and Hugh Crawford, on the 16th day of June, 1874, and which she had assigned to the complainant.

On the hearing in the circuit court, upon bill, answer, replication and proofs, a decree was rendered in favor of complainant, substantially as prayed for in the bill, and the defendants prosecuted this appeal. It is first urged that the complainant, as assignee of the judgment, can not maintain the bill. We perceive no force in this position. The complainant had endorsed the note upon which judgment was rendered, to Elviria Logan, and he had procured John A. Logan to guarantee the payment thereof. It was the duty of complainant to protect, not only his guarantor, but his assignee, and when he paid Elviria Logan the amount of the judgment and took an assignment to himself, in equity he became subrogated to all the rights his assignee had for the collection of the same, and we are aware of no principle which would preclude him from maintaining a bill of this character, if his assignor, Elviria Logan, could maintain a bill in her own name.

This brings us to a consideration of the main question involved in the case, and that is, whether the evidence is sufficient to sustain the decree.

The property in controversy, consisted of a lot and a two-story brick business house, which, as appears from the evidence, was, on the 2d day of December, 1872, conveyed by Crawford to Andrew Friedline, and, on the same day, Friedline conveyed it to Crawford's wife. The complainant's debt was not, however, created until the 13th day of December, 1872, eleven days after the property had been conveyed to Crawford's wife. It also appears, that the debt was not one of Crawford's own contracting; but, on the other hand, John Herrick, on the 13th day of December, 1872, borrowed of Thos. M. Logan $1000, and gave his note for the amount, due in one year, with interest at 10 per cent., which Crawford executed as surety with Herrick, but the note, as executed, was a joint obligation. No consideration passed from Friedline to Crawford for the conveyance of the property, nor was there any consideration for the conveyance

from Friedline to Crawford's wife; but the intent and purpose of the transaction, as appears from the evidence, was to make a settlement upon Elizabeth Crawford, the wife of the owner of the property.

A settlement upon a wife or child, by a voluntary conveyance, without consideration, where the grantor is insolvent, or where he is largely indebted and fails to retain property which proves sufficient to discharge his debts, can not be sustained; but where the grantor is solvent, and the settlement is made in good faith, without a fraudulent intent, the amount being a reasonable provision to be made, due regard being had to the grantor's estate, it may be sustained. This court has held, in a number of cases, and the doctrine may be regarded as well settled, that a settlement of property by a husband upon the wife, where the husband is solvent at the time, and the settlement is reasonable, considering the grantor's circumstances, can not be attacked by subsequent creditors, but such settlement is only void as against creditors existing at the time of the conveyance, unless the settlement is made with a view to future fraudulent indebtedness. *Moritz* v. *Hoffman,* 35 Ill. 553; *Pratt* v. *Myers,* 56 id. 23; *Sweeney* v. *Damron,* 47 id. 450; *Wooldridge* v. *Gage,* 68 id. 158; *Patterson* v. *McKinney, ante,* 41.

As we have before seen, complainant's debt had no existence until eleven days after the property passed from Crawford to his wife. In regard to other indebtedness of Crawford, the only proof complainant introduced on the subject was a note, made to E. S. Richer, for $262.34, payable in six months, signed by John Herrick and Hugh Crawford, without date. Also, a note dated February 9, 1874, due in ninety days, signed by the same parties, given to S. E. North, amount $689; and a note, executed by the same parties, payable to Gill J. Burr, amount $100, given April 12, 1873, due on demand. Not a single one of these debts was shown to have been in existence at the time the settlement was made. The notes were all signed by Crawford as surety, and the

one for $689, given to North, has since been paid.   The only
other proof in reference to Crawford's indebtedness was his
own evidence, and he testified that when the deeds were exe-
cuted he owed only some small liquor bills, not to exceed
$300 or $400, to wholesale merchants, and that he was worth,
over and above the property in controversy, $2000, which
consisted of a homestead (his residence), money, and circuit
clerk fees as former clerk of the circuit court, due and unpaid.
This testimony fails, entirely, to bring the case within the
rule announced in the cases cited, where property conveyed
may be reached by creditors.   Had complainant's debt been
created before the property was conveyed, the conveyance
might be held void as against complainant.   Such was not
the case.   On the other hand, Crawford, at the time he made
the deed, had ample property in his hands to pay and dis-
charge the few small debts he then owed, which, according to
the evidence, did not exceed $400.

The deeds vesting the title in Elizabeth Crawford were not,
however, recorded until the second day of December, 1873, and
it is contended that they are not to be regarded in force, as
against complainant, until that time.   In support of this view,
we are referred to section 30, act of 1872, Session Laws of
1871–2, p. 291, which declares all deeds, mortgages and other
instruments of writing which are authorized to be recorded,
shall take effect and be in force from and after the time of filing
the same for record, and not before, as to all creditors and
subsequent purchasers, without notice, and all such deeds and
title papers shall be adjudged void as to all such creditors
and subsequent purchasers without notice, until the same
shall be filed for record.   Had complainant obtained a judg-
ment before the deeds were placed on record, and before pos-
session of the property was transferred to Elizabeth Crawford,
then he would have had a prior lien over the deeds, under
the section of the statute cited, but we do not understand that
the statute has ever been held to embrace within its pro-
visions a creditor who has not reduced his debt to judgment,

or acquired a lien on the land in some other manner; but, on the other hand, we are of opinion that the statute was only designed to protect such creditors as had obtained a lien on the land by reducing their demands to judgment, or in some other mode provided by the law. This is in harmony with the ruling in *Martin* v. *Dryden*, 1 Gilman, 188, where it was held that a creditor, within the meaning of the Recording act, was one who, without actual or constructive notice of a prior conveyance or incumbrance, institutes such proceedings or takes such steps as effect a lien on the land before the recording of such conveyance or incumbrance, whether the debt be prior or subsequent to them, and whether the vendor, at the time of conveying or incumbering, had other property sufficient to pay the debt, or not.

The only remaining question to be considered is, whether the settlement was made with a view to contracting future fraudulent indebtedness. The record contains no evidence to sustain the decree on this ground. At the time Crawford executed the note to Elviria Logan with Herrick, the latter owned a farm, and was then understood to be entirely solvent, and responsible for all his contracts, and there is no evidence in the record that tends to establish the fact that Crawford ever expected to be called on to pay the note. The same is true in regard to the other three notes which Crawford executed. Under such circumstances, it is unreasonable to believe that Crawford settled the property in question on his wife with the view or expectation of incurring future indebtedness. It is not infrequently the case, that a man who has involved himself as security for others, attempts to dispose of his property in order to avoid the payment of such debts, but it rarely, if ever, occurs, that a person disposes of his property with a view of becoming indebted as security for another.

We are of opinion that the evidence fails to sustain the decree, and the decree will be reversed and the cause remanded.                              *Decree reversed.*