**Charles Sternbach et al. v. Henry Leopold, Isaac Haas, Samuel Cole, Carrie B. Leopold et al.**

**Isaac Haas, Samuel Cole and Carrie B. Leopold v. Charles Sternbach et al.**

**Lehman Spiegelberg et al. v. Charles Sternbach et al.**

1. INSOLVENTS—*Conveyances by Debtor in Failing Circumstances.*— Where a person, in failing circumstances, for the purpose of securing certain creditors, voluntarily made and delivered to them, judgments, notes and mortgages without applications by them for payment or security, judgments upon said notes being entered and the mortgages recorded, etc., *it was held* that the knowledge the person in failing circumstances had of his own condition was chargeable to these incumbrances.

2. INSOLVENTS—*Debtor and Creditor—Unrecorded Mortgages.*—An unrecorded mortgage executed without fraud by a person in failing circumstances for the purpose of securing one of his creditors, is valid as against other creditors having notice of it before they acquire liens upon the property.

3. DEBTOR AND CREDITOR—*Withholding a Mortgage from Record.*— The withholding of a mortgage from record by virtue of an agreement so to do, may be evidence of fraud, but it is not an act that *per se* renders the transaction fraudulent.

4. FRAUD—*Concealment, etc.—Evidence of.*—Circumstances indica-

Sternbach v. Leopold.

tive of concealment, or of a design to give a man the appearance of possessing property which he does not own, are evidences of fraud, and are proper for the consideration of a jury.

5. FRAUD—*Secrecy.*—Secrecy is a circumstance connected with other facts from which fraud may be inferred. An agreement, however, to conceal the fact of a purchase, is not *per se* fraudulent, but is merely matter of evidence in favor of avoiding the sale, which, although perhaps very strong, is still capable of explanation.

6. FRAUD—*Agreement to a Transaction Secret.*—Secrecy is not of itself evidence of fraud. It is likely to accompany fraud, and may give force to other evidence, under particular circumstances.

7. MORTGAGES—*Withholding from Record—Fraudulent, When.*—An agreement or understanding in regard to withholding mortgages from record until mortgagor should have trouble, does not render the mortgages void, but is a matter entitled to consideration by the jury in passing upon the question of fraud at common law. On the other hand, an agreement that the transaction is to be kept secret until the debtor has an opportunity of escaping beyond the reach of process issued by his other creditors, or by which the deed is not to be offered for record until the other creditors threaten suit, will render it fraudulent. Secrecy in such cases is a part of the consideration; the transaction is contaminated by it, and ought not to be regarded as *bona fide.*

8. FRAUDULENT CONVEYANCES—*Secrecy and Concealment.*—" A deed not at first fraudulent may become so by being concealed, because of this concealment persons may be induced to give credit to the grantor. In such a case the use that is made of it relates back and shows the intent with which it was made. The omission to place a deed on record, or leaving it in the hands of the grantor, or placing it in the hands of a third person to be produced or suppressed accordingly as exigencies may demand, are instances of secrecy within the rule. If secrecy is a part of the consideration for securities obtained from a debtor who is about to abscond, it contaminates them.

9. FRAUDULENT CONVEYANCES—*Effect of Agreement to Withhold from Record.*—An agreement for the withholding of a mortgage from record is not, of itself, sufficient to justify a court in holding, as a matter of law, such mortgage fraudulent and void as to creditors, either existing or subsequent; but that is a badge of fraud, to be considered, with all the other facts and circumstances surrounding the transaction, in determining whether or not there was in fact a fraudulent intent.

10. CONVEYANCES—*Notice.*—Notice, given to an agent, relating to, and in the transaction for which he is employed, is generally to be imputed to his principal.

11. AGENCY—*Ratification.*—An act done for another by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal if subsequently ratified by him.

12. RATIFICATION—*Must be in Toto.*—The principal, if he ratifies at

all, must ratify *in toto*, and by ratification the principal assumes the responsibility of the transaction, with all of its advantages and all of its burdens.

13. NOTICE—*To Attorney, Notice to Purchaser.*—Where a purchaser employs an attorney who is himself the vendor, to examine the title, the purchaser is chargeable with notice of what the attorney in making such examination had knowledge of.

14. DEBTOR AND CREDITOR—*Voluntary Acts.*—If a debtor volunteer, and does act as agent of his creditors in procuring a mortgage, and the mortgagee accepts the fruits of such agency, he must be held chargeable with notice of what the mortgagor in such agency had knowledge of.

15. NOTICE—*Of Agent, When Imputed to Principal.*—The notice or knowledge which the agent has will not be imputed to the principal—" 1, where it is such as it is the agent's duty not to disclose, and, 2, where the agent's relation to the subject-matter, or his previous conduct, renders it certain that he will not disclose it."

16. AGENT—*Notice Presumptive as to Performing His Duty.*—The presumption that the agent will perform his duty by informing his principal, " will not prevail where it is certainly to be expected that the agent will not perform this duty, as where the agent, though nominally acting as such, is really acting in his own or another's interest, and adversely to that of his principal."

17. AGENCY—*When Sufficient to Charge Principal with Notice.*—And a mere agency to accept and record a conveyance, or to enter judgment upon notes already executed, is not sufficient to charge the principal with notice of a prior unrecorded mortgage known to the agent.

**Memorandum.**—In chancery. In the Circuit Court of Cook County. Appeal from a decree, etc. Heard in this court at the March term, A. D. 1893. Reversed in part and affirmed in part. Opinion filed July 31, 1893.

## STATEMENT OF THE FACTS.

For some time prior to February 8, 1890, Leopold Bros. & Co. had been merchants in Chicago. Herman Sternbach & Co. had been in business in New York. The firms were friendly in their business dealing and the latter had frequently accommodated the former with loans of money and with credit for goods to large amounts. On February 8, 1890, the Chicago firm was indebted to the New York firm some $35,000. Sternbach visited Henry Leopold, and the result was the making of a $60,000 mortgage, February 8, 1890, by which Leopold conveyed to Sternbach lot 4 in Whitcomb's subdivision, and block 7 in Busby's subdivision in

Chicago.   The mortgage was so framed as to secure any existing or future indebtedness.   It contained no provision or limitation as to the time it should run or be in force.   It was made to cover any notes then existing, or to be thereafter given, and any renewals thereof, without any limitation as to how long such notes should run or how often they might be renewed, the only limitation in that respect being that the aggregate amount should not exceed $60,000.   The mortgage was executed and delivered by the mortgagor and accepted by the mortgagee with the understanding of both parties that it should be withheld from the record, for the reason that recording it would injure the commercial credit and standing of the mortgagor and his firm, and it was withheld from the records by virtue of that agreement until after the failure of the mortgagor and his firm which occurred October 29th of that year.   It was recorded November 5, 1890.   On the date of the mortgage, February 8, 1890, the mortgagor and his firm were largely indebted to sundry parties and they became thereafter further largely indebted, which indebtedness was sought to be secured by sundry judgments, mortgages and conveyances made by him and his firm at the time of the failure and before the recording of that mortgage.

The indebtedness to William Goodheart and Louis Mayer accrued after the date of the mortgage; that of Goodheart accrued in August, and that of Mayer in June, September and October, 1890.   In August Mr. Goodheart discounted, for the accommodation of Leopold Bros. & Co., their note dated August 13th, for $6,500.   Mr. Mayer, through his indorsements for their accommodation, obtained for them the money on their note of June 17, 1890, $5,000; September 6th, $6,000; October 16th, $5,000, and October 24th, $4,000.   Their respective claims were secured by judgments confessed on October 31, 1890.

The claim of Lehman Spiegelberg consists of an undivided one-quarter interest in said block 7.   There were some suggestions of contest in the pleadings, but the contest was abandoned at the trial and it was twice announced

in open court that no question was made as to his rights in that respect, and no assignment of error or argument has been made questioning that right.

He claims also a judgment lien for $15,188.15, judgment entered October 31, 1890. This indebtedness grew partly out of an accommodation indorsement of the firm's note, June 12, 1890, due in five months, which he was obliged to pay, and partly out of a draft drawn on him by the firm, October 23, 1890, for $6,788.50 which he paid, and to reimburse him they sent their draft on a New York bank for the same amount, which was dishonored.

There was also executed and delivered to him and duly recorded October 25th, a mortgage on block seven (7) to secure the $4,500 loan made in 1879. The $3,500 mortgage of Sternbach was, by its terms, made subject to that mortgage to Spiegelberg.

The claim of Carrie Spiegelberg is for a judgment entered October 31, 1890, for $10,150, which claim grew out of a loan several years old which had been renewed from time to time. On November 1, 1890, Leopold conveyed, by quit-claim, to Lehman Spiegelberg said block 7, as additional security for the said two judgments, $15,188.50 in his favor, and $10,150 in favor of his wife, Carrie Spiegelberg. This was dated and recorded four days before complainants' mortgage was placed on record.

As to constructive notice, Tenney, Church & Coffeen were attorneys for Leopold Bros. & Co., and whatever was done by them or either of them up to the time these creditors were secured, was done as attorneys in the employ of that firm. All of these creditors denied having any knowledge of the $60,000 mortgage.

BRIEF OF ISHAM, LINCOLN & BEALE, FOR CHARLES STERNBACH ET AL.

Apart from the operation of the recording statute, and in the absence of fraud in fact, or fraudulent intent, the oldest lien prevails. 1 Jones on Mortgages, Sec. 607; Westervelt v. Voorhis (N. J.), 6 Atl. Rep. 665; Noakes v. Martin, 15 Ill.

Sternbach v. Leopold.

118; Deininger et al. v. McConnel, 41 Ill. 227; Cabeen v. Breckenridge, 48 Ill. 91; Schultze v. Houfes, 96 Ill. 335.

The decisions in this State and elsewhere have laid down the doctrine that withholding a conveyance or mortgage from record does not operate to defeat or postpone it as against general creditors whose claims arose without notice of it; that such withholding is not a fraud *per se* or a fraud in law, but that such withholding is no more than a badge or indication of a fraudulent purpose or intent, and may tend to establish fraud in fact, which may be rebutted. Field v. Ridgely, 116 Ill. 424; W. O. Tyler Paper Co. v. Orcutt-Killick Lith. Co., 35 Ill. App. 500; Stewart v. Hopkins, 30 Ohio St. 502; Magovern v. Richard, 27 S. C. 272; 3 S. E. Rep. 340; Pike v. Armstead, 1 Dev. Eq. (N. C.) 110; Danner Land and Lumber Co. v. Stonewall Ins. Co., 77 Ala. 184; Scott v. Alford, 53 Tex. 82; First National Bank of Peoria v. Jaffray (Kan.), 21 Pac. Rep. 242; Thouron v. Pearson, 29 N. J. Eq. 487; Folsom v. Clemence, 111 Mass. 273; Scott v. McMurran, 7 Blackford (Ind.) 284; Hutchinson v. First Nat. Bk. of Michigan City (Ind.) 30 N. E. Rep. 952; Sawyer v. Turpin, 91 U. S. 114.

BRIEF OF JAMES E. MUNROE, FOR ISAAC HAAS, SAMUEL COLE AND CARRIE B. LEOPOLD.

The Haas, Cole and Carrie B. Leopold mortgages having been recorded prior to the recovery of any of the judgments in question, are liens on the lands thereby conveyed, prior to those judgments. A mortgage becomes a lien as to third parties, from the date of record, and a judgment becomes a lien from the time of its rendition. These propositions are settled by the statutes of Illinois. Rev. Stats., Ch. 30, Secs. 28 and 30; Ibid., Ch. 77, Sec. 1.

The mortgages of Haas, Cole and Carrie B. Leopold having been recorded before the Sternbach mortgage, are prior liens to that, if Haas, Cole and Carrie B. Leopold, at the time of the delivery of their respective mortgages, did not have notice of the Sternbach mortgage. The time when notice

must be brought home to the junior grantee whose instrument is first recorded, in order to postpone his rights, is when his instrument is delivered, and not when it is recorded. Heubsch v. Scheel, 81 Ill. 281; Worden v. Williams, 24 Ill. 73, 74; Rogers v. Wiley, 14 Ill. 65; Rupert v. Mark, 15 Ill. 540; Truesdale v. Ford, 37 Ill. 215; Constant v. Rochester, 133 N. Y. 640.

The notice, to postpone the second grantee whose instrument is first recorded, must be prior to the purchase by the second grantee. Morrison v. Kelly, 22 Ill. 624; Rev. Stats., Ch. 30, Sec. 30.

The second grantee, whose deed is first recorded, is presumed to have purchased without notice of the prior conveyance, and the burden is upon the first grantee whose deed is last recorded, to prove that the second grantee, at the time of his purchase, had notice of the prior deed. Turpin v. Ogle, 4 Brad. 611; Ryder v. Rush, 102 Ill. 338; Kerfoot v. Cronin, 105 Ill. 609.

A mortgagee is a purchaser within the meaning of the Illinois recording laws; and this is true even when the mortgage is made to secure an antecedent debt. Rev. Stats., Ch. 30, Secs. 28 and 30; Partridge v. Smith, 2 Biss. 183; McIntire v. Yates, 104 Ill. 491, 500; Doolittle v. Cook, 75 Ill. 359; Worcester Bk. v. Cheeney, 87 Ill. 602.

In the absence of an agreement to the contrary, it is the duty of the mortgagor or grantor to prepare the mortgage or deed. Hence the act of Henry Leopold in preparing, through his own attorneys, the Haas, Cole and Carrie B. Leopold mortgages, did not make Henry Leopold, or his attorneys, the agents of the mortgagees. Headly v. Shaw, 39 Ill. 354; Hunter v. Bilyeu, 39 Ill. 368; Buckmaster v. Grundy, 1 Scam. 310; Baston v. Clifford, 68 Ill. 67; Corbus v. Teed, 69 Ill. 205.

BRIEF OF CRATTY BROS. & JARVIS, FOR LEHMAN SPIEGELBERG, CARRIE SPIEGELBERG, LOUIS MAYER AND WILLIAM GOODHEART.

The withholding of a mortgage from record, or concealing it from the public to protect the mortgagor's credit, is fraud-

Sternbach v. Leopold.

ulent, and the mortgage becomes invalid as against the rights of other creditors of the mortgagor, and any renewal thereof or substitute therefor will be tainted with the same fraud. Gill v. Griffith & Schley, 2 Md. Ch., 270; Hefner v. Irwin, 1 Ired. (N. C.), L., 490; Wendall v. Rensselaer, 1 Johns. Ch. 352; Standard Paper Co. v. Guenther, 67 Wis. 101; Sanger v. Freie Presse Co. (Wis.), 41 N. W. Rep. 436; Walton v. First Nat. Bk. (Colo.), 2 Pac. Rep. 440; Hidelburn v. Brown, 17 B. Mon. 779; Bump on Fraudulent Conveyances (3d Ed.), sections 32, 38 and 39; Hungerford v. Earle, 2 Vern. 261; Hildredth v. Sands, 2 Johns. Ch. (N. Y.), 35; Coates v. Gerlach, 44 Pa. St. 43; Smith v. Craft, 11 Bissel 340 (12 Fed. Rep. 856); Stockgrowers Bank v. Newton, 13 Colo. 245; 22 Pac. Rep. 444; Wait on Fraudulent Conveyances, Secs. 234, 235, 236; Blennerhassett v. Sherman, 105 U. S. 100; Hilliard v. Cagle, 46 Miss. 309; Hoppock v. Johnson, 14 Wis. 303.

Any scheme or device to defraud, hinder or delay creditors, or to protect the debtor, is fraudulent and void as to them, even though the consideration be perfectly good. Hixon v. Nullikin, 18 Brad. 232; Blatchford v. Boyden, 18 Brad. 378; Reed v. Noxon, 48 Ill 323; Merry v. Bostwick, 13 Ill. 398; Boies v. Henney, 32 Ill. 130; Strohm v. Hayes, 70 Ill. 41; Ley v. Reitz, 25 Ill. App. 615; Finney v. Harding, 136 Ill. 579; Lobstein v. Lehn, 120 Ill. 549.

No action can be maintained upon a note given with a fraudulent mortgage, nor can a fraudulent grantee or mortgagee maintain any claim in equity. The court will not enforce a contract tainted with fraud. Bump on Fraud. Con., Secs. 449, 450; Miller v. Marckle, 21 Ill. 152; Dunaway v. Robertson, 95 Ill. 419; Mitchell v. Sawyer, 115 Ill. 650; Wooley v. Fry, 30 Ill. 163; Lobstein v. Lehn, 120 Ill. 549; Riedle v. Mulhausen, 20 Brad. 68; Com. Natl. Bank v. Burch, 141 Ill. 519.

Notice to the mortgagee of the fraudulent intent of the mortgagor, is per se evidence of mala fides on the part of the mortgagee. In such case the intent of the debtor is imputed to him. Hanchett v. Goetz, 25 Ill. App. 445; Cowling v. Estes, 15 Brad. 255; Thompson v. Duff, 19 Brad. 75; Smith

v. Mohler, 24 Ill. App. 407; Treadwell v. McEwen, 123 Ill. 253.

Constructive notice to a principal on account of the knowledge possessed by an agent will not arise in a case where it was the agent's duty to not disclose it, nor where the agent's relations to the subject-matter show that he will not disclose it. It is the general rule that where an agent has acquired information before the commencement of his agency the principal will not be charged with the constructive notice thereof. Mechem on Agency, Sec. 721; Astor v. Wells, 4 Wheaton, 486; Trentor v. Pothen (Minn.), 49 N. W. Rep. 129; Anketel v. Converse, 17 Ohio St. 11; Doyle v. Teas, 4 Scam. 202; Hoppock v. Johnson, 14 Wis. 303; 1 Story's Equity, Sec. 398; Constant v. University of Roches ter, 111 N. Y. 604; Campbell v. Benjamin, 69 Ill. 244; Snyder v. Partridge, 138 Ill. 173.

One who is only contingently liable to pay the debt of another as surety or indorser may properly take security upon the principal's property, whether the debt be due or not due, or whether he may have paid anything thereon or not. Sherman v. Baddely, 11 Ill. 622; Adam v. Arnold, 86 Ill. 185; Smith v. Craft, 11 Bissel, 340; Alldritt v. First Natl. Bk., 22 Ill. App. 24; Robbins v. Butler Paper Co., 35 Ill. App. 512; Goodheart v. Johnson, 88 Ill. 58.

BRIEF OF S. H. WRIGHT, for WILLIAM SULZBACHER, HENRY GITTERMAN and JOSEPH SULZBACHER.

Knowledge acquired by an attorney in the business of a client can not be imputed to another client in a subsequent transaction.

This is the rule as applied in our State, without a single departure therefrom. While the cases are not numerous, the few adjudications upon the subject are of great strength, and leave the subject free from doubt. McCormick v. Wheeler, 36 Ill. 114; Campbell v. Benjamin, 69 Ill. 244; Herrington v. McCollum, 73 Ill. 476; Snyder v. Partridge, 138 Ill. 174.

There is no requirement of secrecy where two parties,

dealing with each other, like a creditor and a debtor, or a mortgagor and mortgagee, have a mutual attorney.

In this case, Tenney, Church & Coffeen represented the mortgagees and judgment creditors, and also represented Leopold as the mortgagor and judgment debtor.

The following cases illustrate the rule respecting notice through the employment of a mutual attorney: LeNeve v. LeNeve, 2 White and Tudor's Leading Cases 109, and notes page 133; Sheldon v. Cox, 2 Eden 224; Tweedale v. Tweedale, 2 Vernon 341; Fuler v. Bennett, 2 Hare 394; Ogilvie v. Jefferson, 6 Jurist N. S. 970; 2 Gifford 353; Constant v. Rochester, 111 N. Y. 604; Espin v. Pemberton, 5 Jurist N. S. 157; Dunlap v. Wilson, 32 Ill. 523; Polk v. Cosgrove, 4 Bissell 437; Hawkes v. Gathercole, 15 Jurist 186; 2 English Law & Equity Reports, 109; Warde v. Warde, 15 Jurist 759; 3 McNorton & Gordon, 365; 1 Simons 18; Gulick v. Gulick, N. J. Equity 516; Hanlon v. Doherty, 109 Ind. 37; Sherman v. Scott, 27 Hun 331.

Opinion of the Court, Gary, P. J.

Three appeals are separately docketed and pending in this court, but the cases are taken as one, upon one record and one set of abstracts and briefs, by the consent of all parties interested.

The case is that Charles Sternbach was, and is, one member of the firm of H. Hermann, Sternbach & Co., of New York, and Henry Leopold was one member of the firm of Leopold Bros. & Co., of Chicago. The Chicago firm was largely indebted to the New York firm, and wanted further credit.

Henry Leopold was the sole owner of a lot on Indiana avenue, and of an undivided three-fourths of a block on Calumet avenue. On the 8th of February, 1890, Henry Leopold mortgaged both properties to Charles Sternbach, to secure the payment by the Chicago firm to the New York firm of all existing and future indebtedness, with a clause in the condition that "it being understood also that the security of this mortgage shall not exceed in all the sum of sixty thousand dollars."

Charles Sternbach and Henry Leopold agreed that the mortgage should not be presently recorded, and it is quite clear that one reason for delaying the recording of it was to avoid injury to the credit of the Chicago firm, but it is as clear that Charles Sternbach expected the Chicago firm to prosecute its business successfully. It was not in the thoughts of either party that the Chicago firm should continue in business for the purpose of defrauding creditors, present or subsequent. No fraud in fact was intended or perpetrated.

In October, 1890, the Chicago firm found itself insolvent. For some time Tenney, Church & Coffeen had been its attorneys. They were called in, and the senior member of the firm, D. K. Tenney, and Henry Leopold took counsel together. Tenney was informed, probably between the 20th and 25th of October, 1890, of the mortgage. What was thereafter done by his firm, was done under his direction.

The first act shown by the record was this letter:

"CHICAGO, October 29, 1890.

H. Hermann, Sternbach & Co., New York City, N. Y.

GENTLEMEN:—The failure of Leopold Bros. & Co. will occur on the day this reaches you. We have advised them, and such is the fact, that the mortgage given you by Mr. H. Leopold, and which has been kept from record by agreement, is wholly ineffectual as security to you, and is fraudulent as to the subsequent creditors. Our opinion is that the mortgage should never be asserted or mentioned. The courts have lately held that where such a mortgage is given and withheld from record, a new one, to take the place of the old one, is also fraudulent. Be that as it may, Mr. Leopold is anxious to secure you on his individual property, to the extent possible, in justice to some others to whom he is also under confidential obligations.

Therefore, upon receipt of this, please wire us   *   *   * We authorize you to act for us in receiving and recording mortgage from Leopold, or otherwise securing our claim.

Your prompt attention is necessary to make this security valid. Please regard this information for the present as confidential.          Respectfully,

TENNEY, CHURCH & COFFEEN."

Sternbach v. Leopold.

That letter was answered by the following telegram and letter:

"New York, November 1, 1890.

To Tenney, Church & Coffeen, Home Insurance Building, Chicago.

We authorize you to act for us in receiving and recording mortgage from Leopold, or otherwise securing claim.

H. Hermann, Sternbach & Co."

"November 1, 1890.

Messrs. Tenney, Church & Coffeen,

Gentlemen: In answer to your favor of the 29th ultimo, we have just wired you as follows: 'We authorize you to act for us in receiving and recording mortgage from Leopold or otherwise securing our claim,' which we beg to confirm. The same telegram was made out yesterday, but by an error was not sent off.     H. Hermann, Sternbach & Co."

That telegram was answered thus:

"Chicago, November 1, 1890.

H. Hermann, Sternbach & Co., New York City.

Dear Sirs:—In pursuance of the authorization of Mr. Stern, acting for you, we accepted from H. Leopold the note of the firm, secured by a mortgage executed by him upon three-quarters undivided interest in the Calumet avenue property, so called, for $35,000. We inclose herein the note. The mortgage was placed on record yesterday morning, and stands third in line on that property, there being $11,500 ahead. We suppose the property is amply good for all three.

You will understand that, in thus acting, we took what they were willing to give, as we are, primarily, their attorneys. What we sought by our former letter, was that you should confirm this action, so this mortgage would be valid, and of course did not seek further to represent you, unless you so desired.

We presume that you are by this time satisfied that your prior mortgage was merely a delusion, so far as security is concerned.

Please acknowledge receipt.

Tenney, Church & Coffeen."

The $35,000 mortgage was dated October 29, 1890, acknowledged the next day, and filed for record at 8:30 A. M. of the 31st; all before any communication from the New York firm. That mortgage was never accepted by the New York firm, and without going into detail about it, we regard it as waste paper. The New York firm filed a bill to foreclose the $60,000 mortgage. More than that amount was due to it at the time of the failure, and is still due, of the kind of indebtedness the mortgage was made to secure. It was not filed for record until November 5, 1890, and the foreclosure is resisted by numerous parties, all *bona fide* creditors for the respective amounts unpaid upon their several incumbrances, who claim under mortgages made by Henry Leopold on the 29th day of October, 1890, and filed for record within the next two days, and under judgments by confession against the Chicago firm, entered on the 31st day of October, 1890. All of these mortgages to incumbrancers, and all of the judgment notes upon which the judgments entered, were prepared during those three days, under the direction of D. K. Tenney, upon instructions from Henry Leopold as to who should be provided for, and in what order and sums, the manner of making the provision being left to the experienced skill of the attorney; and wholly without application by the respective creditors for payment or security.

The knowledge that Leopold had of his own condition is therefore to be imputed to these incumbrancers. Hovey v. Blanchard, 13 N. H. 145, is a case in point.

- There, a creditor of the grantor in an unrecorded deed, obtained title under an attachment against the grantor, with no knowledge of the deed; but the grantor had delivered to the officer the demand on which the attachment was founded and had ordered the attachment.

The creditor adopting the act, took it *cum onere*. And see 2 Pom. Eq., Sec. 667, note 6, citing many cases.

We need not consider the knowledge that Tenney had. His letters are conclusive that he had enough.

Upon the question of whether the agreement not to record

the mortgage for $60,000, and the performance of that agreement, avoid the mortgage as to other creditors, prior or subsequent, this court is bound by the decision in W. O. Tyler Paper Co. v. Orcutt-Killick Lith. Co., 35 Ill. App. 500.

The mortgage is still good against all creditors having notice of it, before they acquired liens upon the property.

It is conceded, that as to one undivided fourth part of the Calumet avenue property, the paramount title is in Lehman Spiegelberg, so that the $60,000 mortgage, while in terms upon the whole, is in effect upon only an undivided three-fourths, and the decree is for a sale of that only.

It is also conceded that there is a paramount incumbrance by trust deed to Francis B. Peabody on the Indiana avenue property to secure $15,000, and the decree is for a sale subject thereto.

A portion of the Calumet avenue property has been sold under order of the court, and the proceeds are now on deposit subject to the order of the court.

We differ from the Circuit Court, not on the facts, but only as to the one question of law on which we hold ourselves bound by the case cited from 35 Ill. App.

The decree of the Circuit Court postponed the $60,000 mortgage as to so much of the demands of the incumbrancers, other than Peabody, as accrued subsequent to the execution of that mortgage. As to all the residue of the decree, it is affirmed, but that part is reversed and the cause remanded with directions to change the order of priority in the decree so that the $60,000 mortgage be first paid, and then the other incumbrancers in the order among themselves as provided in said decree.

OPINION BY WATERMAN, J.

In these cases the principal contention of appellees is, first, that the withholding of the mortgage made by Henry Leopold to H. Herrman, Sternbach & Co., in pursuance of an arrangement made between Leopold and Herrman, Sternbach & Co., rendered it fraudulent and invalid as against

other creditors of the firm of Leopold Brothers & Co. and the creditors of Henry Leopold; and, second, that the other creditors of Leopold Brothers & Co. obtained their respective liens upon the property covered by said mortgage without notice thereof.

As to the first contention my opinion is largely determined by the finding of the chancellor before whom the case was tried. The decree of the court contains the following : " And the court doth further find that the withholding of said mortgage from record was without fraud on the part of the complainants herein; but that such withholding of the mortgage from record was a fraud in law upon such subsequent creditors of said firm of Leopold Brothers & Company and of Henry Leopold as were not informed thereof."

The testimony in the case was given orally, in open court; the chancellor saw and heard the witnesses, and consequently the finding of the court upon matters of fact about which there was conflicting evidence, must on appeal or error be accepted as conclusive unless such finding clearly appears to be against the weight of the evidence. Metcalf v. Bradshaw, 145 Ill. 124; Patterson v. Scott, 142 Ill. 138; Coari v. Olsen, 91 Ill. 273.

This court is unanimously of the opinion that the finding by the Circuit Court that the withholding of the mortgage made by Henry Leopold to H. Hermann, Sternbach & Co., was without fraud in fact on the part of the complainants, is not against the weight of the evidence, but in accordance therewith.

The question then arises, was it a fraud in law upon any of the other creditors of Henry Leopold & Co. or of Henry Leopold; that is to say, were the terms of the agreement or the nature of the transaction itself such that the law, without regard to the actual intention of the parties, pronounces it fraudulent. There is nothing in our recording law which so stamps this transaction.

The court below found that the mortgage was made and executed substantially as alleged in the bill of complaint,

and for the purpose and to secure the debts then existing and thereafter to be incurred as set out and alleged in said bill of complaint. The bill of complaint sets forth that Henry Leopold, for and on account of his firm of Leopold Bros. & Co., who were then largely indebted to the firm of H. Hermann, Sternbach & Co., applied to complainants for further accommodations in the way of money and credit, and that said Henry Leopold, in consideration of such further accommodations to be made, promised and agreed with them to execute to them a mortgage upon the (described) premises, as security for existing and future indebtedness, and that thereafter said Leopold did execute a mortgage upon, etc., for the purpose, as in said mortgage stated, of securing every promissory note theretofore and thereafter made by said firm of Leopold Bros. & Co. to said firm of H. Herrmann, Sternbach & Co.; that thereafter the said firm of Leopold Bros. & Co. became further largely indebted to complainants, both on account of merchandise sold and delivered to said Leopold Bros. & Co., and on account of money borrowed by them, and executed to complainants promissory notes therefor.

The court below further found that said mortgage was made and executed in February, 1890, but was not recorded until November 5, 1890. "That said mortgage was withheld from record between the dates mentioned by agreement of parties at the request of said Henry Leopold, to prevent injury to the credit of his firm, and to facilitate a proposed sale of the property."

This court is of the opinion that the evidence warranted such finding. That the complainants agreed to and did give further credits for money and goods with the intention of defrauding other creditors, or that Henry Leopold, by virtue of whose favor in attempting to prefer them, all of appellee's claims, intended in anything that was done to defraud them, there is nothing to show.

The court has found that at the request of Henry Leopold, to prevent injury to the credit of his firm and to facilitate a proposed sale of the property, the mortgage was,

by agreement of parties, withheld from record. It appears to me it would have been more accurate to have said that the mortgage was withheld from record by an understanding, instead of an "agreement." The written instrument expressed the agreement of the parties; all previous promises and undertakings were merged in it, and it was only by virtue of a parol understanding that the mortgage was withheld from record.

But taking the fact as found and stated by the court below, the authorities come far short of holding such act fraudulent in law; especially in the face of the finding that the withholding was without fraud in fact on the part of the complainants.

The withholding of a mortgage from record by virtue of an agreement so to do, may be evidence of fraud, but it is not an act that *per se* renders the transaction fraudulent.

Wait in his treatise upon fraudulent conveyances at section 235, says:

" Circumstances indicative of concealment, or of a design to give a man the appearance of possessing property which he does not own, are evidences of fraud, and are proper for a jury to weigh.

" Secrecy 'is a circumstance connected with other facts from which fraud may be inferred.' An agreement, however, to conceal the fact of a purchase, is not *per se* fraudulent, but is merely matter of evidence in favor of avoiding the sale, which, although perhaps very strong, is still capable of explanation. In Haven v. Richardson, the court said: 'Secrecy is not of itself evidence of fraud. It is likely to accompany fraud, and may give force to other evidence, under particular circumstances.' Thus it is held, in Massachusetts, that an arrangement or understanding in regard to withholding mortgages from record until the mortgagor should have trouble, did not render the mortgages void, but was a matter entitled to consideration by the jury in passing upon the question of fraud at common law. On the other hand, an agreement that the transaction is to be kept secret until the debtor has an opportunity,

of escaping beyond the reach of process issued by his other creditors, or by which the deed is not to be offered for record until the other creditors threaten suit, will render it fraudulent. Secrecy in such cases is a part of the consideration; the transaction is contaminated by it, and ought not to be regarded as *bona fide.*

"Sec. 235. As long ago as the case of Hungerford v. Earle, it was held that 'a deed not at first fraudulent may afterward become so by being concealed or not pursued, by which means creditors are drawn in to lend their money.' This doctrine has been repeatedly recognized and reaffirmed in different forms in State and Federal tribunals.

"Sec. 236. In a controversy which arose in Mississippi it was decided that a deed of trust in the nature of a mortgage, valid on its face, and not made or received with any intent to defeat existing or future creditors, may, nevertheless, be held fraudulent and void as to all creditors, existing and future, by evidence *aliunde,* showing the conduct of the parties in their dealings in reference to the deed. The principal circumstances relied on in this case to avoid the deed, were the facts that the grantor retained possession of the property, and that the deed was withheld from record. This enabled the mortgagor to contract debts upon the presumption that the property was unincumbered."

In Bump on Fraudulent Conveyances, page 38, it is said : "A deed not at first fraudulent may become so by being concealed, because by this concealment persons may be induced to give credit to the grantor. In such a case the use that is made of it relates back and shows the intent with which it was made. The omission to place a deed on record or leaving it in the hands of the grantor, or placing it in the hands of a third person to be produced or suppressed accordingly as the exigencies may demand, are instances of secrecy that are within the rule. If secrecy is a part of the consideration for securities obtained from a debtor who is about to abscond, it contaminates them."

The Supreme Court of Indiana in a well considered case, Hutchinson v. First Nat. Bank of Michigan City (Ind.), 30

N. E. 952, after commenting upon the cases, Barker v. Barker's Assignees, 2 Wood 87; Hildeburn v. Brown, 17 B. Monroe, 779; Putnam v. Reynolds, 44 Mich. 113; Hilliard v. Cagle, 46 Miss. 99; Blennerhassett v. Sherman, 105 U. S. 100, and Bank v. Newton, 22 Pac. Rep. 444 (13 Colorado 245), said: "In reading the foregoing cases, and others cited by counsel for appellant, we have been impressed with the weight and influence upon the minds of the various courts of the withholding of instruments from record, in pursuance of agreements or understandings to that effect, when considered as an element of fraud. In none of the cases cited by counsel has the mere failure to record an instrument within the time fixed by statute, whether such failure was in pursuance of a previous contract or by mere neglect, been held sufficient of itself to avoid such instrument. In each of the cases the element of the known insolvency of the mortgagor, active misrepresentation of his financial condition, or other *indicia* of fraud entered into the transaction. We are satisfied that an agreement for the withholding of a mortgage from record is not, of itself, sufficient to justify a court in holding, as a matter of law, such mortgage fraudulent and void as to creditors, either existing or subsequent; but that it is a badge of fraud, to be considered with all the other facts and circumstances surrounding the transaction, in determining whether or not there was in fact a fraudulent intent."

It has frequently been held that the withholding of a conveyance from record in pursuance of an arrangement to do so, does not of itself render the transaction fraudulent. Magovern et al. v. Richard et al., 27 South Car. 272; Sawyer v. Turpin, 91 U. S. 114; Folsom v. Clemence, 111 Mass. 273; Thouron v. Pearson, 29 N. J. Eq. 487; Scott v. Murran, 7 Blackford (Ind.) 284; Scott v. Alford, 53 Tex. 82.

The question here presented is not whether the arrangement to withhold the mortgage from record is evidence of a fraudulent purpose, but whether, in connection with the actual withholding, it is to be held to constitute fraud in law, in the face of the finding of the court upon the question of fraud in fact.

As to this I have no doubt.

Are appellees chargeable with notice of the mortgage?

That notice given to an agent relating to, and in the transaction for which he is employed, is generally to be imputed to his principal, is undisputed. The question in this case is not so much concerning the imputing of knowledge, but in respect to the extent to which either Henry Leopold or D. K. Tenney, are, in the procuring for appellees of the liens which they claim, to be considered their agents.

That the liens of all of appellees were created in pursuance of measures instigated, not by any of them, but by Henry Leopold, and that D. K. Tenney was brought into connection with appellees by said Leopold, and began the work of creating these liens by his direction, is not in controversy. The work of appellees in obtaining these liens was largely that of acquiescence; they accepted what Tenney, by the direction of Leopold, prepared for and tendered to them. None of these liens were created for the benefit of either Leopold or Tenney. All were brought into existence entirely for the benefit of the parties, respectively, who are here claiming under them.

For whom, then, is Henry Leopold to be said to have been acting when he directed the steps which resulted in the mortgages and judgments held by appellees? The acts not being for his benefit, he must have assumed to act for appellees, respectively; such acts they were not bound to ratify, but having ratified them and accepted the fruits thereof, must he not be held to have been their agent in all that in this respect he did?

The maxim " *Omnis ratihabitio retrotrahitur et mandato priori aequiparetur*," a subsequent ratification has a retrospective effect and is equivalent to a prior command, is applicable.

Mr. Justice Story said of this maxim: " No maxim is better settled in reason and law." Fleckner v. United States Bank, 8 Wheaton 363.

It is said in Wilson v. Tumman, 6 M. & Gr. 242: " That

an act done for another by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal if subsequently ratified by him, is the known and well established rule of law. In that case the principal is bound by the act whether it be for his detriment or advantage, and whether it be founded on a tort or contract, to the same extent as by and with all the consequences which follow from the same act done by his previous authority."

The same rule is expressed in Mechem on Agency, Sec. 167. The principal, if he ratify at all, must ratify *in toto*, and by ratification the principal assumes the responsibility of the transaction with all its advantages and all of its burdens. Mechem on Agency, Secs. 170 and 174; Cook v. Tullis, 18 Wal. 332; Despatch Line v. Bellamy Mfg. Co., 12 N. H. 205; Starks v. Sikes, 8 Gray 609.

Had John Doe, an attorney, learning of the existence of this mortgage and the financial condition of Leopold Bros. & Co., without authority from appellees, obtained from Henry Leopold mortgages and power to enter judgments such as were given by him without solicitation, appellees, by availing themselves of the benefit of the unauthorized acts of such attorney, would have made him their agent in so acting, and taken their liens charged with notice of what he, in obtaining them, had knowledge of.

It must be borne in mind that complainants being chargeable with neither fraud in fact nor law, the case stands as though Henry Leopold had executed this mortgage in New York without any understanding that it was to be for a time withheld from record; and this having been done, he had with all haste proceeded to Chicago, and sending for Mr. Tenney informed and directed him as he did, and Tenney and appellees had thereupon taken such action as in this case they did, and thus in the ordinary course of affairs, mails and accidents, the mortgages and judgments of appellants and appellees had occupied the position upon the record they do.

The question presented under the findings, the record of

this case, as to the knowledge Henry Leopold and D. K. Tenney had of this mortgage and the imputation of it to appellees, because of Leopold and Tenney's unsought and unauthorized, but ratified, agency in procuring the liens of appellees, is in effect the same as though there had never been any understanding that the mortgage was to be withheld from record.

It has repeatedly been held that where a purchaser employs an attorney who is himself the vendor, to examine the title, the purchaser is chargeable with notice of what the attorney, in making such examination, had knowledge of. Majoribanks v. Hovendum, 6 Irish Eq. 236; Rorke v. Lloyd, 13 Irish Ch. 273; Spencer v. Toppam, 2 Jurist 865; Tucker v. Henzill, 4 Irish Ch. 513; Atkins v. Delmye, 12 Irish Eq. 1; Twycross v. Moore, 13 Irish Eq. 250.

If a debtor volunteer to, and does act as agent of his creditor in procuring a mortgage, and the mortgagee accept the fruits of such agency, he must be held chargeable with notice of what the mortgagor in such agency had knowledge of.

The case is essentially different from what it would be, had appellees, in ignorance of the mortgage, gone to Henry Leopold and by any act upon their part induced him to give these liens. In such case appellees would have been acting for themselves, and Leopold would have acted for himself in denying or granting the request or demand made.

As it was, Leopold and Tenney undertook to and did all that was necessary to, with ratification by the beneficiaries, create the liens of appellees.

It is true, as urged by appellees, that one who has contracted to convey is bound to prepare the conveyance, but Leopold having never agreed to make a mortgage to appellees, he was under no obligation to prepare a conveyance, and Tenney in all that he did was acting entirely in the interest, not of Leopold, but of appellees, whom Leopold wished to serve. Tenney, indeed, followed the direction and wish of Leopold, but he devised and executed such measures as he thought most expedient for the benefit of appellees, without regard to any interest of Leopold.

It is urged that if appellees are to be charged with the knowledge Leopold and Tenney had of appellants' mortgage, they must be charged with all the knowledge Leopold and Tenney had, which was not only of the existence of the instrument but of the arrangement to withhold it for a time from record.

This is not only quite true as a matter of reason, but there is high authority for the position. Pitman v. Harland, L. R. 17 Chan. Div. 353–357; Williams v. Williams, L. R. 17 Chan. Div. 437–443.

The notice taken altogether did not show that the mortgage was invalid or fraudulent. It is clear that if Leopold had said to appellees—" I have given to appellants a mortgage upon my property to secure them for $60,000 which I owe them, but they have, in order that the mortgage may not injure my credit, agreed not to record it. I can therefore give to you a mortgage which you can record at once and thus your security will have preference over that of appellants " — that appellees could not thus have acquired a priority.

The court below found that appellees Samuel Cole and Isaac Haas, had, at the dates respectively of the mortgages to them, notice of appellants' mortgage; and the court also found that appellees William Goodheart, Louis Mayer, Lehman Spiegelberg, William Sulzbacher, Henry Gitterman and Joseph Sulzbacher had at the times, respectively, when they took their several confessions of judgment, constructive notice of appellant's mortgage.

The court having also found that certain portions of the respective indebtedness due to those parties was incurred between the date of the execution of appellants' mortgage and the several dates when said parties received such notice of appellants' mortgage, gave to them, notwithstanding the notice, a priority over appellants' mortgage for so much of their several claims as were created during said intermediate time; and as to the residue of their several liens postponed them to appellants' mortgage.

Such is not, under our recording act, the rule in this State as to priorities.

In Field v. Ridgely et al., 116 Ill. 424, 431, the Supreme Court said :  " We are aware of no principle outside of self interest and prudence in business, that requires the holder of a mortgage to put it on record at any particular time. By not doing so promptly, he runs the risk of having it postponed to junior liens, and even of losing the benefit of it altogether.   As to subsequent purchasers and creditors without notice, such securities take effect from the time of filing for record, only."

Notice of a conveyance is as affectual as its recording would be.   Morrison v. Kelly, 22 Ill. 610;  Worden v. Williams, 24 Ill. 67;  Rupert v. Mark, 15 Ill. 540.

A creditor within the meaning of the recording act, is one who, without actual or constructive notice of prior conveyance or incumbrance, and before record thereof, acquires a lien on land.   Martin v. Dryden, 1 Gil. 187;  Crawford v. Logan, 97 Ill. 396;  Columbus Buggy Co. v. Graves, 108 Ill. 459;  Thomas v. Burnett, 128 Ill. 37.

In order to give a junior incumbrancer precedence over a senior, it is not sufficient that the debt or conveyance to him was incurred without notice of the older conveyance, but he must, without notice, in some way have obtained a claim upon the land.   Crawford v. Logan, *supra;* Baldwin v. Crow, 86 Ky. 679;  Cowan et al. v. Gill, 11 B. J. Lea, 674;  King v. Fraser, 23 S. C. 545;  First Nat. Bank v. Jaffray et al., (Kan.), 12 Pac. Rep. 242.

The mere loaning of money to Leopold by appellees, gave to them no lien upon, legal or equitable claim to, any land; their liens were acquired by virtue of conveyances by him given, and judgments by him confessed; and the Circuit Court having found, in accordance with the evidence, that when they acquired their respective liens they had constructive notice of appellants' mortgage, their liens are subject thereto.

I do not agree with appellants in their contention that a contingent liability does not furnish a sufficient basis for a confession of judgment.   This court held otherwise in Robbins v. Butler Paper Co., 35 Ill. App. 512, 515.

OPINION BY SHEPARD, J.

I agree that the decree of the Circuit Court ought to be reversed, but for different reasons, and with different directions, if any directions are to be given.

The majority opinions proceed upon the theory of imputed notice to appellees of the Sternbach mortgage for $60,000.

Such notice was derived, if at all, through Mr. Tenney having knowledge of that mortgage. Tenney was primarily the attorney of Henry Leopold and Leopold Brothers, and it was in the course of that employment he learned of the mortgage. His employment was by them, and he never asked for or received employment from the appellees, or either of them, except for the limited purpose of accepting for them such preferences or securities and perfecting some of them, as Leopold had decided upon. He was not authorized to exercise any judgment whatever in the matter in behalf of appellees, and it is clear that he would not have accepted any employment by appellees which would have required him to demand or accept anything but what the Leopolds chose to give, or to insist upon anything contrary to their wishes. In the letter of November 1, 1890, by his firm to the Sternbach firm, it is said: "You will understand that in thus acting (accepting the $35,000 mortgage and filing it for record) we took what they were willing to give, as we are, primarily, their attorneys." All his communications to and with and from the other creditors of the Leopolds show the same limited agency.

The doctrine of imputed notice rests upon the duty of the agent to inform his principal and the presumption that he will perform that duty. The Distilled Spirits, 11 Wall. 356.

Here there was no such duty resting upon Mr. Tenney. His duty lay in exactly the opposite direction, to conceal from appellees the fact of the $60,000 mortgage in order that his primary clients, the Leopolds, might be enabled to effectuate their design of securing other creditors in preference to that mortgage.

In Mechem on Agency, Sec. 721, it is said that the notice

or knowledge which the agent has, will not be imputed to the principal—" 1, where it is such as it is the agent's duty not to disclose, and, 2, where the agent's relation to the subject-matter, or his previous conduct, render it certain that he will not disclose it."

In the case of The Distilled Spirits, *supra*, it is said: "An agent would not be expected to do that which would involve the betrayal of professional confidence, and his principal ought not to be bound by his agent's secret and confidential information." See also, Webb on Record of Title, Sec. 241.

Again in Mechem on Agency, Sec. 723, it is said, the presumption that the agent will perform his duty by informing his principal, " will not prevail where it is certainly to be expected that the agent will not perform this duty, as where the agent, though nominally acting as such, is really acting in his own or another's interest, and adversely to that of his principal," and numerous authorities are cited to support the text.

There is nothing in the record making it appear that Mr. Tenney or his firm, ever acted as attorney or agent for either of the appellees in any other transaction. The fact that Mr. Tenney communicated to some of the appellees the information that the Leopolds were embarrassed and desired to secure them, and that other of the appellees were taken to him by Leopold, was enough to cause them to understand he was in confidential relations with the Leopolds, and owed them his first duty. They had no right, therefore, to expect from him any duty beyond that of a mere acceptance of the securities for which he sought authority from them. No presumption of any other duty than to accept the securities can be said to have arisen, under the circumstances.

And a mere agency to accept and record a conveyance, or to enter judgment upon notes already executed, is not sufficient to charge the principal with notice of a prior unrecorded mortgage known to the agent. Doyle v. Teas, 4 Scam. 202, (see p. 250); Astor v. Wells, 4 Wheaton, 466; Trentor v. Pothen, 46 Minn. 298; Anketel v. Converse, 17 Ohio St. 21–22; Snyder v. Partridge, 138 Ill. 173.

Nor do I consider that the finding of the Circuit Court that the appellees, or any of them, had constructive notice of the Sternbach $60,000 mortgage is binding upon this court. Such a finding is a conclusion of law, from the facts, and not itself a fact. Nor do I agree with the majority opinion that the knowledge that Leopold had of his own condition or of the Sternbach mortgage, constituted constructive knowledge of the same facts by appellees. Such a conclusion can only rest upon the assumption that Leopold was the agent of the appellees.

It is true that the securities by way of mortgages and judgments were instigated and created by Leopold, but the acceptance of them by appellees was through their attorney, Tenney, who, in aid of Leopold's purpose, solicited and received their authority to accept the same. Tenney, and not Leopold, was the agent of appellees for that limited duty.

It seems to me to be fraught with far-reaching and disastrous consequences to hold, that because Leopold, of his own volition, sought to secure certain of his creditors by means of mortgages and judgments voluntarily made and confessed by him, and accepted by such creditors through an agent who had no authority except to accept the same as given, and who was at the same time primarily the attorney of Leopold for the purpose of preparing the papers in furtherance of Leopold's plan, the creditors thereby became chargeable with knowledge of all that Leopold knew of his condition, and of prior unrecorded conveyances made by him.

What was said in Hoppock v. Johnson, 14 Wis. 328 (p. 332) is illustrative on the question of the debtor being an agent under kindred circumstances:

"Suppose A makes a mortgage to B; then he borrows money of C, who has no knowledge of the first mortgage, and agrees with him to execute a mortgage on the same property and to deliver it to an agent appointed by C. Does the fact that he thus delivers it under C's direction make him the agent of C, so as to charge C with notice of B's mortgage because A knew it? It seems really too

obvious for argument that it does not; and yet such is this case."

I think the decree below should have subordinated the $60,000 mortgage to all the other mortgages and judgments in their order of priority, as between themselves. I do not express any conclusion upon the effect to be given to the $35,000 mortgage executed to Sternbach.

When the cause shall come here again, if it shall so come, upon a different decree, I may take occasion to speak of that.