PERCY B. ECKHART, Trustee, Appellant, *vs.* THE BURRELL MANUFACTURING COMPANY *et al.* Appellees.

*Opinion filed October 26, 1908.*

HUSBAND AND WIFE—*gift to wife cannot be impeached by person not a creditor at the time.* A gift of money from husband to wife will not be set aside at the suit of the husband's trustee in bankruptcy where it does not appear that any of the persons for whose benefit the bill was filed were creditors of the husband at the time of the transaction, or that the gift was made for the purpose of hindering and delaying the collection of debts, the creation of which was then in contemplation of the parties.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

CLARENCE T. MORSE, (PERCY B. ECKHART, of counsel,) for appellant.

E. C. WESTWOOD, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Percy B. Eckhart, trustee in bankruptcy, filed a bill in chancery in the circuit court of Cook county to set aside certain conveyances alleged to have been made in fraud of

creditors. The circuit court denied the relief and dismissed the bill, and that decree has been affirmed by the Appellate Court. The trustee has prosecuted an appeal to this court.

The facts are not seriously controverted. George C. and James T. Burrell were co-partners in the business of contracting for the construction of grain elevators. In July, 1902, the partners withdrew $2900 in cash and divided it equally between their respective wives. The money was loaned to the Burrell Manufacturing Company, a corporation engaged in manufacturing elevator supplies, by the donees, who took notes from the corporation, with an agreement that the notes were to be paid by issuing certificates of stock to the parties when the capital stock was increased. The books of the co-partnership were introduced in evidence, from which it appears that at the time the gifts in question were made the assets of the co-partnership were $36,000 and the liabilities $30,000. After the money above mentioned was given to the wives, the business of the partners became unprofitable to such an extent that in December following they were forced into bankruptcy. The shrinkage in the assets is explained by unexpected losses on certain contracts then on hand. The circumstances mentioned as the direct cause of such losses are, that the supply-men did not live up to their contracts for the delivery of material; that labor conditions became serious; that the price of labor advanced as well as the price of material; that they had a serious loss on account of floods in Texas and quicksand at Hammond, Indiana, where they had a large contract for constructing elevators. The loss at Hammond, Indiana, was over $12,000, and something near $5000 at El Paso, Texas. At the time of the failure, in December, 1902, the liabilities of the partnership were $27,000 and the assets $5000.

This bill is filed on the theory that the firm was insolvent at the time the gift in question was made, and is intended to reach the shares of stock which were bought

with the money given their wives by the partners. Only one question need be considered. There is no averment in the bill and no proof in the record that any of the creditors on behalf of whom the bill is filed were creditors at the time the alleged gift was made. No one not a creditor at the time of the transaction can impeach a gift by a husband to his wife. So far as this record shows, all of the indebtedness that existed at the time the gift was made may have been fully paid. In fact, we are inclined to agree with the. Appellate Court that it is a fair inference, under the proof, that such debts were paid, and that all of the creditors represented by appellant extended credit after the assets had been reduced by the gift.

In the case of *Bridgford* v. *Riddell,* 55 Ill. 261, this court said (p. 263) : "It is not doubted that it is competent for the husband to create a separate estate for his wife out of his own property if there are no creditors of the husband at the time whose rights will be put in jeopardy; and even if there are creditors, if the husband retains a sufficient amount to liquidate their claims it is still lawful. No one can impeach the transaction or inquire into its propriety unless he was a creditor of the husband at the time and was thereby injured. It has never been held, to our knowledge, that a subsequent creditor can inquire into the fairness of the transaction, even if the conveyances to the wife be regarded as voluntary conveyances without actual consideration, for the sole purpose of creating a separate estate in the wife. It seems to us that it would be inequitable to hold that a man in his prosperous days could not create a separate estate for the wife, which should be for her maintenance in case disaster should overtake him in his business transactions in later life, and that the estate thus created for the wife would not be beyond the reach of his subsequent creditors. The law not only sanctions such a course, but in many instances it is nothing more than simple justice to the wife. A father, under such circum-

stances, may make a like provision for his child, and his right to do so has been sanctioned by the highest judicial authority in this country and in England. The doctrine on these questions has been fully discussed and approved in this court in the case of *Moritz* v. *Hoffman,* 35 Ill. 553, and need not now be discussed as a new question." The same doctrine was announced again in *Tunison* v. *Chamblin,* 88 Ill. 378. On page 385 this court said: "But it is the doctrine of this court that only creditors having claims when the fraud is committed can avoid such conveyances, unless it be shown the deed was made in anticipation of incurring debts to avoid the payment of which the conveyance was made. (Citing cases.) And there is no evidence in this record that Chamblin's debts were then in existence. For aught that appears, the debts, however large they may have been against Tunison when the entry was made, may all have been paid. We cannot presume these debts then existed. On the contrary, we presume, if they had, that fact would have been shown." These cases have been re-affirmed in *Crawford* v. *Logan,* 97 Ill. 396, and *Eames* v. *Dorsett,* 147 id. 540.

The bill in this case is not framed on the theory that this money was given to their wives to hinder and delay the collection of debts the creation of which was then in contemplation by the parties, and if it were, the proof in this record would not sustain a bill so drawn. The evidence shows that at the time the gift in question was made the parties were doing a very large and prosperous business and that they had always been able to meet their obligations promptly. They had contracts on hand from which they might reasonably expect, in the ordinary course of events, to be able to meet all liabilities in favor of the parties in whose behalf this bill is filed.

There being no error in the record the judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*